Lee MEYERS et al., Plaintiffs,

v.

George F. SMITH, Jr., et al.,
Defendants.

Civ. A. No. 78–0852.

United States District Court,
District of Columbia.

Nov. 15, 1978.

On Motion for Reconsideration
Dec. 14, 1978.

Jacob A. Stein, Washington, D.C., for plaintiffs.

Jeffrey P. Moran, Roger Warin, R. Harrison Pledger, Jr., Washington, D.C., Joseph Montedonico, Rockville, Md., for defendants.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

This action for damages for breach of a fiduciary relationship was filed on May 12, 1978, by Patrick Reynolds, Michael Reynolds, and Lee Meyers. Patrick and Michael Reynolds are the sons of the late tobacco heir R. J. Reynolds and the stepsons of the co-plaintiff, Lee Meyers. The defendants, George F. Smith, Jr., William R. Bernard, Joanne Crothers, and Robert C. Johnson, Jr., are attorneys who have, at various times, been members of the Washington, D.C. law firm of Cross, Murphy, and Smith.

According to the complaint filed in this action, the plaintiffs were clients of the defendants' law firm and sought and received advice on establishing a bank in Grand Cayman, Cayman Islands, British West Indies. The complaint alleges that the defendants, besides rendering legal advice to the plaintiffs, solicited and were permitted participation in the plaintiffs' venture which became the Reynolds Bank. The plaintiffs allege that the defendants intertwined their economic interests with that of their clients, pursued a course of self-dealing, and eventually wrested control of the Reynolds Bank from their clients.

Presently before the Court are motions by the defendants Smith and Johnson to dismiss on jurisdictional grounds. For the reasons hereinafter stated, the Court denies the motion of the defendant Johnson and grants the motion of the defendant Smith.

Defendant Johnson has moved the Court to dismiss the complaint in this action pursuant to Fed.R.Civ.P. 12(h)(2) for lack of jurisdiction over the person. Since he is a resident of Texas, defendant Johnson contends that he has not had sufficient contact with Washington, D.C., to empower the Court to assert jurisdiction consistent with the requirements of due process and the District of Columbia long-arm statute, section 13–423, D.C.Code.

■ The "transacting any business" section of the D.C. long-arm statute, § 13–423(a)(1), has been interpreted broadly, and its reach is limited only by due process considerations. *Margoles v. Johns,* 157 U.S. App.D.C. 209, 215, 483 F.2d 1212, 1218 (1973); *Unidex Systems Corp. v. Butz Engineering Corp.,* 406 F.Supp. 899, 901–02 (D.D.C.1976).

■ The Supreme Court has articulated a flexible approach to the due process requirement. Essentially, due process requires that the nonresident defendant have certain minimum contacts with the forum so the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There must be some act by which the defendant purposely avails himself of the privilege of conducting activities in the forum state invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Certain passages in the Supreme Court's decision in *International Shoe Co.* are especially relevant to the Court's determination in this case:

It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. . . . But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

326 U.S. at 319, 66 S.Ct. at 160 (citations omitted).

The determination is often no more than a balancing of the practical equities once some minimal contact with the jurisdiction is established. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The plaintiff has uncovered several contacts between the defendant Johnson and the forum which the defendant acknowledges as "a credit to plaintiffs' counsel's creativity and ingenuity." However, the defendant contends that the plaintiffs' approach is a "shotgun attempt" to grasp at "isolated, outdated, and legally insignificant 'facts'." Response of Robert C. Johnson, Jr., to Plaintiffs' Opposition to Motion of Defendant Johnson to Dismiss, at 2 (August 11, 1978).

The contacts the plaintiffs rely on to empower the Court to assert jurisdiction over the defendant Johnson include the following: (1) he has been a member of the District of Columbia Bar; (2) he has held himself out as being a member of the District of Columbia law firm of Cross, Murphy, and Smith, with his name on the firm's letterhead and in the Martindale-Hubbell directory; (3) he engaged in legal consultations with the plaintiff Lee Meyers in the offices of the law firm of Cross, Murphy, and Smith in May of 1975; (4) he attended a directors' meeting of the Reynolds Bank in the District of Columbia in May of 1975; and (5) in July of 1976, the defendant Johnson, through his agent Crothers, transacted business in the District of Columbia at a general meeting of the Reynolds Bank.

The defendant Johnson has attempted to discount the legal significance of these contacts with the forum. He contends that the meetings that are mentioned as contacts occurred outside the period of the statute of limitations, therefore precluding the Court from considering them as bases for jurisdiction. For support of this notion, the defendant relies on one sentence in one case, from a different circuit, that did not involve a statute of limitation but a release from liability. In *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975), the U. S. Court of Appeals for the Second Circuit states:

Inasmuch as Norman and David were released from any and all liabilities or rights of action of any nature whatsoever rising out of events prior to March 6, 1972, it is difficult to see how the appellants can predicate jurisdiction in New York on any activity prior to that date.

527 F.2d at 90.

■ Despite the language in this case, the Court will not create a rule completely precluding consideration of contacts occurring slightly outside the period of limitations in the process of determining whether the Court may assert jurisdiction. These meetings detailed by the plaintiffs were allegedly held as part of the scheme to twist

an attorney-client relationship to the attorney's advantage. The Court will not ignore these contacts simply because they occurred outside the period of limitations.

■ The Court finds that jurisdiction can be asserted over the defendant Johnson consistently with the requirements of due process. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court upheld the assertion of jurisdiction by a state court over a nonresident insurance company because the suit was based upon an insurance contract which had substantial connection with the jurisdiction. *Id.* at 223, 78 S.Ct. 199. In the case presently before the Court, the attorney-client relationship was centered in this jurisdiction. Moreover, in *McGee,* the Court was concerned with the special nature of the insurance business and the states' interest in providing effective redress to those with disputes with the insurer. *Id.* This case presents similar concerns. An attorney, an officer of the court, should not be free to escape the jurisdiction where the propriety of his services delivered in that jurisdiction is implicated by a client, especially while soliciting business by holding himself out as a partner in a District of Columbia law firm.

The Court, in reaching its decision, has not mechanically dissected the strength of each particular contact between the jurisdiction and the defendant, but instead has considered the entire picture presented in light of fair play and justice.

■ Defendant Smith moves the Court to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), on the basis of a loophole in 28 U.S.C. § 1332 which provides the courts with diversity jurisdiction. The parties concede that to obtain diversity jurisdiction, a party must be either a resident of an American state or a citizen or subject of a foreign state. Thus, a citizen of the United States who is a permanent resident abroad cannot be a diverse party. *See* Wright, *Handbook of the Law of Federal Courts*, Ch. 4, sec. 22, p. 80 *citing Van Der Schelling v. United States News & World Report, Inc.,* 213 F.Supp. 756 (D.C.

Pa.1963) *aff'd* 324 F.2d 956 (3d Cir.) *cert. denied,* 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964); *Hammerstein v. Lyne,* 200 F. 165 (D.C.Mo.1912); *Pannill v. Roanoke Times Co.,* 252 F. 910 (D.C.Va.1918).

■ Before the Court is an affidavit of the defendant George F. Smith, Jr. The defendant states that he was married on November 23, 1973, and left the State of Texas to become a permanent resident of the Bahamas. On April 20, 1976, he applied for a certificate of permanent residence in the Bahamas, and on May 9, 1978, his application was approved. He has described himself as a permanent resident of the Bahamas on tax forms, and the U. S. Internal Revenue Service has accepted his contentions in this regard. The Court finds that the defendant Smith is an American citizen who has established a permanent residence abroad and is therefore not amenable to diversity jurisdiction before this Court.

## ON MOTION FOR RECONSIDERATION

In an Order dated November 15, 1978, the Court denied the motion of defendant Robert C. Johnson, Jr., to dismiss this action on jurisdictional grounds. Presently before the Court is a motion for reconsideration of that Order or, in the alternative, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The counsel for defendant contends that the Court's Order was based upon erroneous assumptions of fact, in that the Court asserted that there was an attorney-client relationship between Johnson and the plaintiffs despite the record being "devoid even of a credible *allegation* regarding existence of such a relationship." Motion of Defendant Robert C. Johnson, Jr., for Reconsideration of Order of November 15, 1978, or, In the Alternative, for Amendment of Order of November 15, 1978, to Permit Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), at 7 (November 21, 1978) (emphasis in original). With all due respect, counsel for defendant Johnson is mistaken.

In the plaintiffs' memorandum of points and authorities accompanying their opposi-

tion to defendant's motion to dismiss, counsel for the plaintiffs alleged the following:

Plaintiff Lee Meyers was at all times a client of Mr. Johnson, contracting with his firm to provide legal services for him in the District of Columbia. In fact both the law firm and defendant Johnson did supply these services for the plaintiffs in the District of Columbia. When the Reynolds Bank venture commenced Mr. Johnson held himself out as a member of the firm of Cross, Murphy & Smith, and co-plaintiff Lee Meyers considered Mr. Johnson to continue as his attorney under a relationship which had begun as early as 1969. Over the years, Mr. Johnson performed legal services for co-plaintiff Meyers with respect to several matters including the drafting of a trust instrument. These services were at all times contemplated to be, and were, supplied in the District of Columbia. On the basis of being Mr. Meyers' attorney, defendant Johnson was permitted to serve on the board of directors, acquire stock and acquire subscription rights in the Reynolds Bank.

Points and Authorities in Opposition to Defendant Johnson's Motion to Dismiss, at 7 (July 28, 1978).

These allegations were supported by the affidavit of the plaintiff Meyers accompanying this pleading:

I, Lee Meyers, do state upon my oath as follows:

1. I know of my own personal knowledge that Robert C. Johnson, Jr., provided legal services through the law firm of Cross, Murphy & Smith, Washington, D.C., for co-plaintiffs Patrick C. Reynolds and Michael R. Reynolds and their mother, Marianne Reynolds, commencing in the late 1960's. It was through co-plaintiffs' mother, Marianne Reynolds, that I met George F. Smith, Jr., who introduced me to Robert C. Johnson, Jr., and identified Mr. Johnson as a member of the law firm of Cross, Murphy & Smith. The introduction took place at the office of the law firm in the District of Columbia.

2. After meeting Mr. Johnson, he performed legal services for me including the writing of a trust agreement during the year 1970 and from time to time thereafter I consulted with him and his firm concerning a variety of matters.

3. I have always been led to believe by Mr. Johnson and the other members of the Cross, Murphy & Smith law firm that Mr. Johnson was and is a partner. I saw him from time to time in the offices of the law firm. Mr. Johnson knew his [sic] was my lawyer and knew that I considered him my lawyer.

4. Mr. Johnson never advised me that 1) he was not my lawyer, nor 2) that he had terminated his relationship with the law firm.

Throughout this proceeding, most of the attention of the parties was focused on contacts occurring within three years of the date upon which suit was filed. However, the Court rejected Johnson's contention that contacts prior to this date could not be considered. Thus, the Court was free to find, for purposes of the motion to dismiss, that the plaintiffs, at least at some point, were clients of Johnson and that Johnson had delivered legal services to the plaintiffs in the District of Columbia. This finding was a portion of the picture presented to the Court in this action for breach of fiduciary relationship, and it was fully supported by the record before this Court.

Accordingly, it is, by the Court, this 13th day of December, 1978,

ORDERED, that the defendant Johnson's motion for reconsideration be, and the same hereby is, denied; and it is

FURTHER ORDERED, that defendant Johnson's motion for amendment to permit interlocutory appeal be, and the same hereby is, denied because an immediate appeal from this Order would not advance the ultimate termination of the litigation, as required by 28 U.S.C. § 1292(b).