**BANK OF CAPE VERDE, Plaintiff,**

v.

**Bruce BRONSON, et al., Defendants.**

**Civ. A. No. 94–1092.**

United States District Court,
District of Columbia.

Nov. 29, 1994.

**22**

Kip Schwartz, Susan B. Gerson, Graham & James, Washington, DC, for plaintiff.

James Nunemaker, Rivkin, Radler & Kremer, Uniondale, NY, Joel M. Savits, Jordan Coyne & Savits, Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

On November 10, 1994, the Court heard oral arguments on two motions to dismiss filed respectively by the "Bronson defendants"[1] and the "Gibney defendants",[2] as well as a motion for judgment on the pleadings filed by the Gibney defendants. At the close of arguments the Court determined that it lacked personal jurisdiction over both sets of defendants. This opinion memorializes that bench ruling granting both motions to dismiss and denying as moot the Gibney defendants' motion for judgment on the pleadings.

### I. Background

Beginning in 1989, two clients of attorney Bronson, Towers Financial Corporation ("Towers") and its subsidiary TFC Funding Corporation ("TFC"), entered into a series of loans with plaintiff Bank of Cape Verde ("the Bank").[3] Plaintiff claims that an express condition of these loans was that Towers and TFC furnish a legal opinion confirming that they were not insolvent, that the warranties in the loan agreement were true, that the loan agreements conveyed valid lien interests in the assets of TFC, and that the receivables granted as collateral would be free of liens and encumbrances. Defendant Bronson furnished these opinions which were transmitted to the Bank via the Cape Verde Embassy and the Bank's counsel, both of which are located in the District of Columbia.[4]

In early 1993, TFC and Towers defaulted on their loans, and on February 8, 1993, the Securities and Exchange Commission filed suit charging that Towers and TFC were the largest "Ponzi scheme" in American history. Both are now in bankruptcy and plaintiff is unable to recover its $20 million default judgment against them.[5]

Several facts are undisputed. Both sets of defendants are New York based attorneys. Neither set of defendants have offices in the District of Columbia and there is no evidence that they have clients here. None of the defendants were ever physically present in the District of Columbia in connection with the transactions underlying this lawsuit. Bronson was never hired by the Bank to represent it. Any representations made by Bronson concerning the status of Towers and TFC were in connection with Bronson's rep-

---

1. Bruce Bronson is the principal attorney whose conduct is at issue in this case. Also named as part of the "Bronson defendants" are Bronson's law firm, Bronson & Migliaccio, and his law partners.

2. The "Gibney defendants" are the law firm of Gibney, Anthony & Flaherty, and the partners of that firm. Defendant Bronson was allegedly associated with this firm between April 1989 and September 1991.

3. Plaintiff is an instrumentality of the Cape Verde government. It has no place of business in the United States, although several diplomats at the Cape Verde embassy allegedly act as agents and or officers of the bank. For purposes of this motion we accept this as true. It should be noted, however, that in another case in this jurisdiction the Bank claims to be the citizen of a foreign country and thus able to bring suit against a partnership doing business in the District of Columbia through diversity of citizenship. *See Bank of Cape Verde v. KPMG Peat Marwick*, No. 94–1816.

4. Defendants claim that the opinion letters were transmitted to the law firm and not the embassy. We assume for purposes of this motion that at least some letters were sent directly to the embassy.

5. This default judgment was entered in the Southern District of New York where other suits related to this massive fraud are pending. Neither the Bronson nor the Gibney defendants contest that the District Court for the Southern District of New York may validly exercise personal jurisdiction over them.

resentation of Towers and TFC. None of the research or documents upon which Bronson relied were located in the District of Columbia. Plaintiff claims jurisdiction based solely on the forwarding of opinion letters to the District of Columbia and several phone calls made by Bronson to the Cape Verde Embassy.

## II. *Analysis*

The Court must look to the District of Columbia long-arm statute, D.C.Code § 13–423,[6] to determine if plaintiff has met the threshold requirement of a *prima facie* showing of personal jurisdiction over defendants. *Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 915 (D.D.C.1980).

> [T]he most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum.

*Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C.1981), *cert. denied*, 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

In this case, we conclude that defendants' contacts with the forum are minimal and not of a quality that manifests a deliberate and voluntary association with the District of Columbia. Defendants never represented the Bank, nor did they benefit directly from the loan agreement between plaintiff and TFC and Towers. Any activity by defendants related to their representation of TFC and Towers, and any telephone calls or mailing to the District of Columbia occurred solely because the Bank requested that material be sent here. As stated by the D.C. Court of Appeals,

> [i]t is important in our analysis to recognize that the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts.

*Sol Salins v. Sure Way Refrigerated Truck Trans. Brokers*, 510 A.2d 1032, 1035 (D.C. 1986) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984)) (internal quotation marks omitted). Defendants did not intend to transact business here when they complied with plaintiff's request to have certain documents mailed to the Cape Verde Embassy and to the Bank's counsel in the District of Columbia.

Both motions to dismiss are granted because plaintiff has not satisfied the D.C. long-arm statute. We need not consider whether the exercise of personal jurisdiction in this case would comport with constitutional due process requirements.[7] We also do not reach the arguments on the merits raised by the Gibney defendants in support of their motion for judgment on the pleadings.

An order in accordance with this opinion has been issued this date.

## ORDER

Upon consideration of the pending motions in this case, it is by the Court, this 29th day of November, 1994, hereby

ORDERED that the motion to dismiss for lack of personal jurisdiction filed by the "Bronson defendants" is granted; and it is

ORDERED that the motion to dismiss for lack of personal jurisdiction filed by the "Gibney defendants" is granted; and it is

ORDERED that the motion for judgment on the pleadings filed by the "Gibney defendants" is denied as moot; and it is

FURTHER ORDERED that this case is dismissed with prejudice.

---

**6.** Section 13–423(a)(1) provides jurisdiction over a person "transacting any business in the District of Columbia." Section 13–423(a)(4) permits jurisdiction over persons causing tortious injury in the District "if he regularly does or solicits business [or] engages in any other persistent course of conduct."

**7.** *See International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).