**CELLUTECH, INC., Plaintiff,**

v.

**CENTENNIAL CELLULAR CORPORATION and Centennial Jackson Cellular Corporation, Defendants.**

Civ. A. No. 94–1788 (PLF).

United States District Court, District of Columbia.

Dec. 23, 1994.

Thomas Earl Patton, Washington, DC, for plaintiff.

R. Bruce Beckner, Washington, DC, for defendants.

### MEMORANDUM OPINION

FRIEDMAN, District Judge.

This matter came before the Court for argument on defendants' motion to dismiss for lack of personal jurisdiction or for improper venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure.

Plaintiff, a corporation with its principal place of business in Illinois, brought suit on its own behalf and on behalf of Jackson Cellular Partnership, a general partnership formed under the laws of the District of Columbia, alleging that the defendants, both incorporated under the laws of Delaware with their principal place of business in Connecticut, breached a contract between the parties. The contract was for the sale of a cellular radio system located in Michigan. It was negotiated over the telephone and through the mails and interstate courier service between the non-resident defendants and plaintiff's transaction lawyer in the District of Columbia. Neither the parties nor their representatives ever had any face-to-face meetings in the District of Columbia or elsewhere in the course of negotiating the contract. Plaintiff alleges that the defendants breached the contract by failing to file a registration statement with the Securities and Exchange Commission in Washington, D.C., within the time required by the contract and by failing to pay the second of two installment payments to plaintiff under the contract. The first installment was paid by wire transfer to the Washington, D.C., bank of plaintiff's lawyer.

The question raised by this motion is whether the two non-resident defendants, whose only contact with the District of Columbia consisted of communicating by telephone and interstate courier service with the plaintiff's transaction lawyer in the District of Columbia, had sufficient contacts with the forum to support the personal jurisdiction of this Court under the transacting business provision of the District of Columbia long-arm statute. D.C.Code § 13–423. Defendants are not qualified to do business in the District of Columbia, have no registered agents for service of process here, have no offices or employees in the District, derive no revenues from sales or operations located in the District, do not advertise in publications or electronic media whose principal audience is in the District, have no listings in any telephone or business directories in the District, solicit no business in the District, receive no mail in the District and have no bank accounts in the District. Furthermore, the subject matter of the contract is located in Jackson, Michigan, and the contract specifically provided that Michigan law would govern its construction. A broker with offices in Colorado brought the two sides together. Defendants engaged New York counsel to prepare the SEC filings and Washington, D.C., counsel to prepare filings with the FCC required by the contract.

Under the District of Columbia long-arm statute, a plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant. *First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1378 (D.C.Cir.1988); *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir.1990); *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 70 (D.D.C.1992); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.,* 524 F.Supp. 558, 561 (D.D.C.1981). To establish personal jurisdiction under the "transacting business" clause of the long-arm statute, plaintiff must prove that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District; and (3) the defendant had minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 71 (D.D.C.1992). While the long-arm statute is interpreted broadly, plaintiff must allege some specific facts evidencing purposeful activity by defendants in the District of Columbia by which they invoked the benefits and protections of its laws and specific acts connecting the defendants with the forum. *First Chicago Int'l v. United Exchange Co. Ltd.,* 836 F.2d at 1378–79; *Meyers v. Smith,* 460 F.Supp. 621,

622 (D.D.C.1978); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.*, 524 F.Supp. at 563. The Court must resolve personal jurisdiction issues "on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for jurisdiction." *Environmental Research Institute, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 811 (D.C.1976).

■ Plaintiff relies primarily on the Supreme Court's decision in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), for its argument that there is jurisdiction under the long-arm statute. It particularly relies on the Court's observation in *Burger King* that in today's commercial world business often is transacted solely by mail and wire communications across state lines and that jurisdiction therefore may exist in some circumstances even if a defendant "did not *physically* enter the forum State." 471 U.S. at 476, 105 S.Ct. at 2184. The question under *Burger King*, as always, was whether the commercial actors' efforts are purposefully directed towards the forum state and whether the defendants' conduct and connection with that state are such that "he should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (*quoting Worldwide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). *Burger King* requires a court in assessing minimum contacts to examine "prior negotiations and contemplated further consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 479, 105 S.Ct. at 2185. A defendant must "purposefully avail" himself of the privilege of conducting business within the forum state, a requirement that ensures that the defendant will not be haled into court in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person,' ..." *Id.* at 475, 105 S.Ct. at 2183 (citations omitted); *see also*

*Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C.1981).

The problem with plaintiff's reliance on *Burger King* is that the facts and circumstances justifying a finding of long-arm jurisdiction in that case demonstrated much more extensive contacts with the State of Florida than are demonstrated with the District of Columbia here. Burger King, though a nation-wide organization, was a Florida corporation based primarily in Florida, "[t]he contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami.... [D]ecision-making authority was vested in the Miami headquarters and ... the district office served largely as an intermediate link between the headquarters and the franchisees.... [I]t was the Miami headquarters that made the key negotiating decisions out of which the instant litigation arose." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 480–81, 105 S.Ct. at 2187. The contract contemplated "a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," and the franchisee voluntarily accepted "the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 480, 105 S.Ct. at 2186. As a result, the Supreme Court concluded that Rudzewicz purposefully availed himself of the privilege of conducting activities in Florida and "the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated'." *Id.* He was subject to personal jurisdiction in Florida.

This case is very different. The contract was for the sale of a cellular radio system in Michigan and was governed by Michigan law. There was to be no long-term relationship between the parties after the sale was completed. While the negotiations took place in part by mail and wire into the District of Columbia, none of the principals were involved in negotiations here or were present in the District at any time. It is a mere fortuity, over which defendants had no control and from which defendants could derive no expectation of consequences, that plaintiff

chose Washington counsel to conduct these negotiations. Defendants' minimal contacts with the forum do not manifest a deliberate and voluntary association with the District of Columbia and simply do not rise to the level of transacting business within the District that is necessary to invoke the jurisdiction of our courts. *See Bank of Cape Verde v. Bronson,* 869 F.Supp. 21 (D.D.C.1994). The non-resident defendants' long-distance contract negotiations with a non-resident plaintiff's attorney who happened to have offices in the District and the wiring of money to that attorney's District of Columbia bank account are not significant enough contacts to have caused defendants reasonably to anticipate being haled into court here. *See Health Communications, Inc. v. Mariner Corp.,* 860 F.2d 460 (D.C.Cir.1988) (discussing the limited guidance provided by *Burger King* and the realistic case-by-case analysis required).

■ The fact that after the parties concluded the contract negotiations the defendants made filings with the FCC and the SEC in the District of Columbia does not, standing alone, provide jurisdiction here. The "government contacts exception" prevents plaintiff from basing personal jurisdiction on that fact. This exception "precludes the assertion of personal jurisdiction over a non-resident whose only contacts with the District of Columbia are for purposes of dealing with a federal agency or Congress." *Dooley v. United Technologies Corp.,* 803 F.Supp. 428, 434 (D.D.C.1992); *see also Environmental Research Institute, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d at 813. The District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government. *Dooley v. United Technologies Corp.,* 803 F.Supp. at 434; *see also Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1196–99 (D.D.C.1984).

The fact that defendants engaged a District of Columbia attorney to assist with the FCC filing does not change the outcome under the government contacts exception. By obtaining a Washington, D.C., attorney to assist them in the required filing, defendants did not purposely establish minimum contacts such that they could reasonably expect to be haled into the jurisdiction to defend themselves on the breach of contract matter. *Compare Fisher v. Bander,* 519 A.2d 162 (D.C.1986) (a nonresident client who hires a D.C. attorney with FCC expertise for government filings can reasonably anticipate being haled into a D.C. court by the attorney to defend any disputes with that attorney). The motion to dismiss for lack of personal jurisdiction will be granted.

■ At the close of oral argument on the pending motion, counsel for plaintiff orally moved the Court to transfer this case rather than to dismiss it if the Court found that it did not have personal jurisdiction. A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants, but the decision whether to do so is in the Court's discretion. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C.Cir.1983) (citation omitted), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Under 28 U.S.C. § 1406(a), the Court in the interest of justice may transfer rather than dismiss the case.[1] The Court finds that the interests of justice will be served by transferring the case. In this action arising from a transaction negotiated through interstate mails and wires, the plaintiff made a non-frivolous argument for seeking jurisdiction in the District of Columbia, although it was ultimately mistaken about whether this forum could exercise in personam jurisdiction. Transferring the case will save the parties the time and expense of refiling this lawsuit in a different district. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962); *Sinclair v. Kleindienst,* 711 F.2d 291, 293–94 (D.C.Cir.1983).

---

1. Section 1404(a) deals with situations in which venue is proper in the district court where the action was originally filed and addresses whether the court should retain or transfer a case. Section 1406(a), on the other hand, addresses whether transfer or dismissal is the appropriate action when venue is found to be improper. In this case, venue appears to be improper in the District of Columbia. Thus, this case would fall under section 1406(a). *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 (1986).

Plaintiff suggested that the Court should transfer the case to Michigan because the subject matter of the contract is located there, and, pursuant to a choice of law clause, the contract is governed by Michigan law. Defendants argued that all of their witnesses are in either New York or Connecticut and that the lawsuit belongs in court in one of those two jurisdictions rather than in Michigan. According to plaintiff, its only witness resides in Washington, D.C. New York or Connecticut would appear to be the most convenient location for defendants' witnesses and is no less convenient, and likely more accessible, than Michigan for plaintiff's witness. Because no partners of the plaintiff reside in Connecticut, and for the convenience of witnesses and in the interests of justice, the Court in its discretion finds it appropriate to transfer this case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1406(a). *See Armco Steel Co., L.P. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C.1991); *International Comfort Products, Inc. v. Hanover House Industries, Inc.,* 739 F.Supp. 503, 507 (D.Ariz.1989).

For the forgoing reasons, defendants' motion to dismiss is GRANTED and plaintiff's motion to transfer is GRANTED. An Order consistent with this Memorandum Opinion is entered this same day.

SO ORDERED.