MALLINCKRODT MEDICAL, INC.
and Molecular Biosystems, Inc.

v.

SONUS PHARMACEUTICALS, INC., Nycomed Imaging AS, Imarx Pharmaceutical Corp., DuPont Merck Pharmaceutical Co., Bracco Diagnostics, Inc.

Civil Action No. 97–1732(PLF).

United States District Court,
District of Columbia.

Jan. 5, 1998.

Christopher Andrew Myers, Holland Knight, Washington, DC, George Brian Busey, Morrison & Foerster, Washington, DC, Gordon William Hatheway, Jr., Reed Smith Shaw & McClay, Washington, DC, for Mallinckrodt Medical, Inc.

George Brian Busey, Morrison & Foerster, Washington, DC, Gordon William Hatheway, Jr., Reed Smith Shaw & McClay, Washington, DC for Molecular Biosystems, Inc.

Sara Needleman Kline, Wilmer Cutler & Pickering, Washington, DC, for Sonus Pharmaceuticals, Inc.

Edward Tuck Colbert, Sr., Kenyon & Kenyon, Washington, DC, for Nycomed Imaging, AS.

Margaret Moran Zwisler, Howrey & Simon, Washington, DC, for ImaRx Pharmaceutical Corp.

Sylvia M. Becker, Kaye Scholer Fierman Hays Handler, Washington, DC, for DuPont Merck Pharmaceuticals Co.

Thomas Douglas Hollowell, Jr., Rogers & Wells, Washington, DC, for Bracco International BV, Bracco Diagnostics Inc.

## OPINION

PAUL L. FRIEDMAN, District Judge.

### I. BACKGROUND

Bracco Diagnostics, Inc., DuPont Merck Pharmaceutical Co., ImaRx Pharmaceutical Corp. and Sonus Pharmaceuticals, Inc. are all manufacturers of injectable contrast imaging agents for use with diagnostic ultrasound equipment in the diagnosis of cardiac dysfunction. Each product contains a fluorinated gas (perfluoropropane) or a fluorinated chemical encapsulated in a microspheric membrane or microbubble. On April 14, 1997, each of these companies brought a lawsuit in this Court against the Food and Drug Administration alleging that they were being harmed by the FDA's decision to treat their products as drugs for purposes of the FDA approval process, while treating the virtually identical product of a competitor, Molecular Biosystems, Inc. ("MBI"), as a medical device with a simpler, speedier application and approval process. The Court con-

solidated the three cases. MBI sought leave to intervene, and the Court granted its motion. By Opinion and Order of April 21, 1997, the Court concluded that plaintiffs were likely to succeed on the merits of their claim that the FDA had acted arbitrarily and capriciously by failing to treat similarly situated products in the same fashion. The Court therefore enjoined the FDA from continuing any approval or review procedures with respect to any applications for approval of ultrasound contrast agents until ten days after the FDA resolved the Citizens' Petitions fried by Bracco, DuPont Merck and ImaRx, and Sonus. *See Bracco Diagnostics Inc. v. Shalala,* 963 F.Supp. 20 (D.D.C.1997).

On July 25, 1997, the Food and Drug Administration provided a consolidated response to the Citizens' Petitions regarding the regulation of ultrasound contrast agents. In that response, the FDA announced that it would treat all ultrasound contrast agents as drugs under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.,* and would assign primary oversight and review responsibility to the Center for Drug Evaluation and Research. On August 1, 1997, having negotiated numerous extensions of time with the other parties, MBI, as defendant-intervenor in the Bracco, DuPont Merck and Sonus lawsuits, filed its consolidated answer to the complaints and asserted counterclaims against Bracco, DuPont Merck and ImaRx, Sonus and two new parties, Nycomed Imaging AS and Bracco's foreign counterpart, Bracco International BV. MBI's counterclaims brought wholly different issues to the table, involving claims under the patent law. The counterclaims generally stemmed from MBI's fear that the counterclaim defendants would sue MBI for infringing their patents (for the use and prospective marketing of its ultrasound contrast agent), which allegedly cover the use of perfluorocarbon gases in ultrasound contrast agents. In its counterclaims, MBI sought declaratory and injunctive relief that would either render the counterclaim defendants' patents invalid and unenforceable or enjoin them from enforcing their patent claims.

By Memorandum Opinion and Order of September 10, 1997, the Court concluded that the three consolidated cases had become moot on July 25, 1997 when the FDA provided its consolidated response to the plaintiffs' Citizen Petitions. *Bracco Diagnostics, Inc., et al. v. Food and Drug Administration, et al.,* Civ. Action Nos. 97–0739, 97–0740, 97–0742, Opinion at 4 (D.D.C. July 25, 1997). Finding that plaintiffs had received all the relief they had sought by that date, the Court concluded that MBI's answer and counterclaim were filed too late: "The case was already moot and there was no live case or controversy before this Court when MBI filed its answer and counterclaim on August 1, 1997." *See id.* at 5. Because the cases were moot *before* MBI filed its answers and counterclaims, the Court granted the motions of Sonus, DuPont Merck and ImaRx, and Bracco to strike the counterclaims and dismiss the three cases in their entirety.

Meanwhile, on July 31, 1997, MBI and Mallinckrodt Medical, Inc. (the marketer for MBI's ultrasound contrasting agent) filed a separate complaint, giving birth to this separate action. MBI and Mallinckrodt brought claims against Bracco and Bracco International, DuPont Merck and ImaRx, and Sonus, as well as Nycomed Imaging AS, seeking essentially, the same relief they had sought in their counterclaims in the original FDA lawsuit.

In this case, MBI and Mallinckrodt claim that the FDA is on the verge of approving their ultrasound contrasting agent, Optison. They contend that this otherwise positive development has been frustrated because the defendant companies have, in one way or another, threatened to bring patent infringement actions against them once Optison is approved. In Count One, they seek a declaration that the patents filed by Sonus, Nycomed, ImaRx and DuPont, and Bracco and Bracco International are invalid and unenforceable for failure to comply with the requirements of the patent laws and/or a declaration that the manufacture, use and sale of Optison will not infringe any valid and enforceable patent of any of the defendants.[1]

1. MBI and Mallinckrodt generally contend that defendants' patents are invalid because they

claim patent rights to a use that has been obvious to the scientific community for many years—the

In Count Two, MBI and Mallinckrodt request that, in the event the Court concludes that any one of defendants' patents is valid, the Court determine which defendant holds the patent covering the use of perfluorocarbon gas in ultrasound contrasting agents.[2] Alternatively, MBI and Mallinckrodt seek a declaration and/or injunction requiring defendants to invoke patent interference proceedings in the Patent and Trademark Office or to initiate an interfering patent suit in this case pursuant to 35 U.S.C. § 291 in order to resolve defendants' allegedly conflicting claims of priority of invention. Finally, in Count Three MBI and Mallinckrodt seek compensatory and injunctive relief against Sonus for making false and defamatory statements about (1) the scope of Sonus' patent rights to the use of perfluorocarbon gas in ultrasound contrast agents (2) MBI's alleged infringement of Sonus' patents through its product Optison and (3) the order in which the FDA will approve MBI's and Sonus' ultrasound contrast agents.

On September 2, 1997, Nycomed answered the complaint and brought a counterclaim against MBI and Mallinckrodt. In Count One of its counterclaim, Nycomed seeks a declaratory judgment that MBI and Mallinckrodt have infringed Nycomed's patent, which allegedly covers Optison's use of perfluorocarbon gas. In Count Two, it seeks a declaratory judgment that Nycomed's patent is valid and enforceable against MBI and Mallinckrodt. In Count Three, Nycomed seeks a declaration that MBI is not entitled to a royalty-free license under Nycomed's patent. In addition to its counterclaim against MBI and Mallinckrodt, Nycomed has brought a cross-claim against Sonus seeking a declaration, pursuant to an interfering patent action under 35 U.S.C. § 291, that either Nycomed's patent claims preceded those of Sonus or that Sonus' patent is invalid under one or more provisions of the patent law.

Currently before the Court are a series of motions to dismiss filed by Sonus, Nycomed,

Bracco, Bracco International, DuPont Merck and ImaRx, all relating to issues of subject matter and personal jurisdiction under Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. ImaRx also raises the defense of failure to join an indispensable party under Rule 12(b)(7), Fed.R.Civ.P., and Bracco, Bracco International, DuPont Merck and ImaRx argue that plaintiffs have failed to state a claim under Rule 12(b)(6), Fed. R.Civ.P. The briefing was extensive and the briefs voluminous. The Court heard approximately two-and-one-half hours of argument on December 9, 1997. The Court has carefully considered all the written and oral arguments of the parties and their analysis of each issue presented, as well as the statutory and case authority cited by them. For the reasons that follow, the Court finds that it lacks jurisdiction over most of the claims and most of the parties before it.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

For this Court to have jurisdiction, there must have been be an actual case or controversy between the parties at the time the action was commenced. In the patent context, an actual controversy exists if the party seeking a declaratory judgment demonstrates either that there is (1) an explicit threat or other action by a patentee that creates a "reasonable apprehension" on the part of the plaintiff that it will face an infringement suit, and (2) present activity that could constitute infringement or "concrete steps taken with the intent to conduct such activity." *Cygnus Therapeutics Systems v. ALZA Corp.*, 92 F.3d 1153, 1158–59 (Fed.Cir. 1996); *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). Although plaintiffs do not have to prove that they were confronted with an express charge of infringement, "more is required than the existence of an adversely held patent." *BP*

---

use of perfluorocarbon gas in ultrasound contrast agents.

**2.** MBI and Mallinckrodt maintain that all of defendants' patents purport to cover the same exact use of perfluorocarbon gas in ultrasound contrast agents. To the extent that this use *can* be

patented, MBI and Mallinckrodt claim that no more than one person or company can hold a patent covering the use. For this reason, they also claim that defendants' patents interfere with each other.

*Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d at 978. Ultimately, the Court must look to the "totality of circumstances." *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed. Cir.1992).

With respect to Bracco and Bracco international, all that plaintiffs offer in their attempts to establish an actual case or controversy is the existence of the Bracco patents, which they allege cover Optison's use of perfluorocarbon gas, and the fact that Bracco was a party to the action that sought to force the FDA to regulate all ultrasound contrast agents in the same manner. There is no allegation that either Bracco or Bracco International made an explicit threat or engaged in any other activity that could have created a reasonable apprehension of suit on the part of MBI or Mallinckrodt. The fact that the Bracco companies hold patents, which may be infringed by certain of Optison's uses, is not enough. *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d at 978. Nor is it sufficient that Bracco · sued the FDA, and that MBI—which was not initially a party to the FDA action—sought to intervene and was granted intervenor status. The FDA lawsuit did· not involve patent law issues, and there was nothing that transpired in that case that would have given MBI any indication, let alone a reasonable apprehension, that a patent action would be instituted by Bracco or Bracco International. *See Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986); *cf. CAE Screenplates, Inc. v. Beloit Corp.,* 957 F.Supp. 784, 792 (E.D.Va.1997).

The same is true with respect to DuPont Merck and ImaRx. The only extra claim that plaintiffs have regarding their reasonable apprehension of an infringement action by DuPont Merck and ImaRx is the fact that Evan Unger, the President and Chief Executive Officer of ImaTRx, wrote a letter to Dina Gardner of MBI on July 25, 1996 in which Mr. Unger stated:

> Enclosed for your information is a copy of one of our recently issued patents, U.S. Patent No. 5,527,521 entitled "Low Density Microspheres and Suspensions and Their use as Contrast Agents for Computed Tomography and In Other Applications." This patent is directed to, among other things, perfluorocarbon gas-filled microspheres useful in diagnostics imaging (see, for example, claim 20), and represents the latest of a number of patents issued to ImaRx in the diagnostic field.

DuPont Merck and ImaRx Motion to Dismiss, Ex. E; Declaration of Thomas A. Fritz at ¶ 35. Plaintiffs admit that this letter alone could not create a reasonable apprehension of a patent infringement action by DuPont Merck and ImaRx, but they contend that the letter in combination with the FDA litigation warrant such an apprehension. The Court disagrees.

As the Court has already concluded with respect to Bracco, the fact that DuPont Merck and ImaRx were plaintiffs in the FDA litigation could have created no reasonable apprehension of an infringement action; the innocuous letter that MBI and Mallinckrodt now point to adds nothing to the equation. The language of the letter is not a threat, express or implied; it has no threatening language or threatening qualities to it; and it could not by any stretch of the imagination create a reasonable apprehension that MBI and Mallinckrodt would face an infringement suit by DuPont Merck or ImaRx. *See Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1052 (Fed.Cir. 1995); *Shell Oil Co. v. Amoco,* 970 F.2d at 888; *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d at 883.[3]

---

**3.** To the extent that plaintiff finds some meager support for its position in the suggestion of a district court in Louisiana that a refusal to disclaim an intention to bring a patent infringement suit in the future is enough to create a "reasonable apprehension" and thus an actual case or controversy, *see Ryko Manufacturing Co. v. Delta Services and Equipment Corp.,* 28 U.S.P.Q.2d 1558, 1560 n. 1 (E.D.La.1993), such a requirement runs contrary to Federal Circuit precedent.

"Although a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination [regarding reasonable apprehension of suit], ... this factor is not dispositive." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d at 980 (internal citation omitted); *see Shell Oil Co. v. Amoco Corp.,* 970 F.2d at 888–89; *see also CAE Screenplates, Inc. v. Beloit Corp.,* 957 F.Supp. at 791.

Plaintiffs fare no better with respect to their interpleader argument under Rule 22 of the Federal Rules of Civil Procedure. The notion that the procedural device of interpleader can be used as a hook to give the Court subject matter jurisdiction to order the patent-owning defendants to initiate an interfering patents action under 35 U.S.C. § 291 is not only novel but far-fetched. *See Commercial Union Insurance Co. v. United States,* 999 F.2d 581, 584 (D.C.Cir.1993). "Rule 22 ... 'is merely a procedure device; it confers no jurisdiction in the federal courts....' Thus, an interpleader brought under Rule 22 must fall within one of the general statutory grants of federal jurisdiction." *Id.* (internal citation omitted). Neither 35 U.S.C. § 291 itself nor any other statute grants this Court subject matter jurisdiction over this claim.

First, there simply is no statute that provides this Court with jurisdiction to force the parties either to go to the Patent and Trademark Office to institute an interference proceeding or to pursue one in this Court. *See In re Continental General Tire, Inc.,* 81 F.3d 1089, 1091–92 (Fed.Cir.1996). Second, Section 291 is plain on its face: "The *owner* of an interfering patent may have relief against the owner of another by civil action and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part." 35 U.S.C. § 291 (emphasis added). Neither MBI nor Mallinckrodt is the owner of an interfering patent and, thus, even if Rule 22 provided subject matter jurisdiction (which it does not) Section 291 is simply unavailable to companies like MBI and Mallinckrodt who are not owners of an interfering patent. *See Albert v. Kevex Corp.,* 729 F.2d 757, 760–61 (Fed.Cir.), *rehearing denied,* 741 F.2d 396, 399 (Fed.Cir. 1984); *Regents of the University of California v. Eli Lilly & Co.,* 777 F.Supp. 779, 783–84 (N.D.Cal.1991). Plaintiffs may not use Rule 22 interpleader to force a patent interference action and thus circumvent Section 291's limited grant of standing. With respect to this issue, the Court fully embraces the discussion and analysis of Judge Jensen in *Advanced Cardiovascular Systems, Inc. v. Medtronic. Inc.,* No. C–95–3577 DLJ, 1996 WL 467293, at *7–*8 (N.D.Cal. July 24,1996).

For these reasons, the Court concludes that there is no actual case or controversy between MBI/Mallinckrodt and Bracco/Bracco International or DuPont Merck/ImaRx. The Court therefore lacks subject matter jurisdiction and must grant the motions of Bracco and Bracco International and DuPont Merck and ImaRx to dismiss all the claims against them brought by MBI and Mallinckrodt under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. *Personal Jurisdiction*

Sonus and ImaRx argue that this Court lacks personal jurisdiction over them because they have had no contacts with the District of Columbia other than (a) having petitioned the FDA with respect to the approval of applications for their ultrasound products and having protested to the FDA the disparate treatment their products were receiving, and (b) having filed a lawsuit in this Court against the FDA to vindicate their rights under the APA when they received no relief from the agency. Plaintiffs maintain that filing the FDA lawsuit is a sufficient basis for personal jurisdiction in and of itself and, furthermore, that by bringing suit here Sonus and ImaRx impliedly consented to the jurisdiction of this Court. In addition, plaintiffs maintain there is jurisdiction over Sonus in the District of Columbia because Sonus published a defamatory statement on America On Line accusing MBI of patent infringement that was available to AOL subscribers in the District of Columbia.

The District of Columbia long-arm statute permits the courts of this jurisdiction to exercise personal jurisdiction over a person who acts, either directly or through an agent, "as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1). When jurisdiction is based on this subsection (the "transacting business" subsection) of the long-arm statute, "only a claim for relief arising from acts enumerated in [the long-arm statute itself] may be asserted against [that person]." D.C.Code § 13–423(b). In relying on the "transacting business" subsection of the long-arm statute one must meet both the requirements of subsec-

tion (a)(1) and subsection (b). *See Crane v. Carr,* 814 F.2d 758, 763 (D.C.Cir.1987); *Novak–Canzeri v. Saud,* 864 F.Supp. 203, 206 (D.D.C.1994).

■ The Court rejects plaintiffs' implied consent argument. It is true that Sonus and ImaRx chose this forum in which to bring a lawsuit against the FDA. They did not, however, choose this forum to litigate a patent case. Nor did they ever sue MBI here. Once the FDA lawsuit was dismissed, Sonus and ImaRx had no expectation of being haled into court in the District of Columbia by a company they did not sue in the FDA case who, on its own initiative, had intervened in that case prior to its termination. It would be ludicrous to suggest that Sonus and ImaRx consented to the jurisdiction of this Court for all time, with respect to all potential competitors, and for all purposes, simply because they once chose to sue the FDA here. The fact that MBI intervened in the FDA lawsuit makes the proposition no less palatable. The FDA lawsuit is over and done with, and the subject matter of that suit—relating solely to the administrative actions of the FDA—had nothing to do with patents or patent infringement. The initiation of that action neither implies consent to be sued, nor does it "in and of itself constitute doing business in the jurisdiction where the suit [was] brought." *Payton v. Summit Loans, Inc.,* 253 A.2d 459, 461 (D.C.1969).

■ In addition, because the District of Columbia is the Nation's capital and because it is important that all citizens from all parts of the country have unfettered access to petition their government, the courts of this jurisdiction have long recognized "a government contacts" exception to the "transacting business" provision of the long-arm statute. Under that exception, a person or company does not subject itself to the jurisdiction of the courts of the District of Columbia merely by filing an application with a government agency, like the FDA, or by seeking redress of grievances from the Executive Branch or Congress. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Freiman v. Lazur,* 925 F.Supp. 14, 24 (D.D.C.1996); *Environmental Research Int'l., Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813 (D.C.1976) *(en banc).* "The District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government." *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. 46, 50 (D.D.C.1994).

■ Furthermore, under the government contacts exception, a person or entity that has unsuccessfully petitioned the Executive Branch, an independent agency or Congress and then seeks redress before the federal or local courts in the District of Columbia is not thereby "transacting business" for purposes of the long-arm statute. When instituting suit for that purpose, it continues to be protected by the government contacts exception. *Naartex Consulting Corp. v. Watt,* 722 F.2d at 787 (citing *Doe v. McMillan,* 566 F.2d 713, 718 (D.C.Cir.1977)); *see Lex Tex Ltd. v. Skillman,* 579 A.2d at 248 n. 9; *cf. Investment Company Institute v. United States,* 550 F.Supp. 1213, 1217 (D.D.C.1982). Accordingly, the fact that Sonus and ImaRx sued the FDA in this jurisdiction does not subject them to jurisdiction for purposes of this patent litigation under the transacting business subsection of the long-arm statute.

■ Moreover, even if there were some theory under which bringing the FDA litigation could be construed as "transacting business" in the District of Columbia, to establish personal jurisdiction under subsection (a)(1) of the long-arm statute, the plaintiffs' claim itself must have arisen from the business transacted in the District of Columbia. D.C.Code § 13–423(b). *See Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 71 (D.D.C.1992). As this Court held in *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. at 48:

> To establish personal jurisdiction under the "transacting business" clause of the long-arm statute, plaintiff must prove that (1) the defendant transacted business in the District, (2) the claim arose from the business transacted in the District, and (3) the defendant had minimum contacts with the District such that the Court's exercise

of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."

The asserted patent infringement at issue here did not arise from the wholly separate regulatory litigation against the FDA in which MBI chose to intervene.[4]

■ With respect to Sonus, plaintiffs have another arrow in their quiver. In addition to having brought suit against the FDA in the District of Columbia, Sonus also sent a message from Seattle to Virginia over America On Line, a private subscriber service, which has been posted on AOL's electronic bulletin boards. The posting allegedly includes the following language:

> The commercialization of FS–069 [Optison] in the United States would infringe one or more patents owned by Sonus Pharmaceuticals, Inc. and Sonus would take such willful infringement very seriously.

Complaint at ¶ 94. Plaintiffs argue that approximately 200,000 District of Columbia residents are subscribers to AOL and that they may have access to the posting. According to plaintiffs, Sonus therefore is and has been transacting business in the District of Columbia for purposes of subsection (a)(1) the long-arm statute. This posting, plaintiffs argue, when combined with Sonus' institution of a lawsuit against the FDA here, creates sufficient contacts between Sonus and the District of Columbia to satisfy both the long-arm statute and minimum contacts under the due process clause.

In addition, plaintiffs argue that the transmission of the AOL message, which they claim was defamatory, provides jurisdiction under subsection (a)(4) of the long-arm statute. That subsection provides personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly ... engages in any ... persistent course of conduct ... in the District of Columbia." D.C.Code § 13–423(a)(4). The Court rejects both of these arguments.

The AOL transmission from Seattle to Virginia, which was subsequently posted on an AOL electronic bulletin board and may have been accessed by AOL subscribers in the District of Columbia, cannot be construed as "transacting business" in the District of Columbia. The message was not sent to or from the District of Columbia, the subject matter of the message had nothing to do with the District of Columbia, and neither plaintiffs nor Sonus reside in, have their headquarters in or are incorporated in the District. Other than the fact that some people may have visited the electronic bulletin board and read the message from here, the AOL posting has no connection to this jurisdiction. The act of posting a message on an AOL electronic bulletin board—which certain AOL subscribers may or may not choose to access, according to each individual's tastes and interests— is not an act purposefully or foreseeably aimed at the District of Columbia. Therefore, it does not—separately, or in combination with the FDA lawsuit—constitute transacting within the District of Columbia for purposes of the long-arm statute. *Compare Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d

---

4. ImaRx admits to having limited contacts with the District for purposes of conducting clinical tests of its own ultrasound contrasting agent, DMR–115. The clinical tests were performed at Georgetown University Medical Center, located in the District. of Columbia, and future clinical testing will also be conducted there. The Court concludes that these clinical tests are irrelevant to its personal jurisdiction analysis here because plaintiffs' patent law claims could not reasonably be viewed as having arisen from those clinical tests.

ImaRx argues that if it is dismissed for lack of personal jurisdiction, the claims of DuPont Merck also must be dismissed, because ImaRx, as the owner of the patents at issue, is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. A patent owner who has given a license to another (as ImaRx has with respect to DuPont Merck), but has retained substantial rights in the patent, is an indispensable party in an action regarding validity or infringement of the patent. *See Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132–33 (Fed.Cir.1995); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 308 n. 3 (D.Del.195); *Suprex Corp. v. Lee Scientific, Inc.*, 660 F.Supp. 89, 93–94 (W.D.Pa.1987). ImaRx maintains that it has retained such substantial rights under its patent. Plaintiffs contend that they should be allowed discovery in order to fully explore this issue. Because the claims against DuPont Merck must be dismissed for lack of subject matter jurisdiction, *see supra* at 269–270, the Court finds no need to resolve this factually-based issue.

414, 419–20 (9th Cir.1997) (to be reported at 130 F.3d 414) (essentially passive nature of posting home page on World Wide Web does not qualify as purposeful activity invoking benefits and protection of the home forum), *and Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y.1996) (passive Web site doing little more than making information available to those having interest is not grounds for personal jurisdiction), *aff'd,* 126 F.3d 25 (2d Cir.1997), *with Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1125–27 (W.D.Pa.1997) (defendant contracting via Internet with individuals and Internet access providers subjects it to personal jurisdiction in state in which those individuals and providers reside), *and CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261–68 (6th Cir.1996) (individual who purposefully contracted and directly communicated via Internet with computer network service provider is subject to personal jurisdiction in the service provider's home state).

■ Plaintiffs fare no better under subsection (a)(4) of the long-arm statute. While the transmission of the message occurred from outside the District of Columbia, there is no indication that plaintiffs themselves suffered any injury in the District of Columbia that they could not have suffered or did not suffer in any state in the nation where someone may have read the message and reacted negatively towards plaintiffs. There is no nationwide jurisdiction for defamation actions, *see McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1300 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 53, 136 L.Ed.2d 16 (1996), and the advent of the Internet and Internet service providers such as AOL does not change that fact. *See Graphic Controls Corp. v. Utah Medical Products, Inc.,* No. 96–CV–0459E(F), 1997 WL 276232, at *3 (W.D.N.Y. May 21, 1997); *IDS Life Ins. Co. v. SunAmerica, Inc.,* 958 F.Supp. 1258, 1268 (N.D.Ill.1997). Most importantly, even if plaintiffs suffered injury in the District of Columbia, they have not demonstrated that Sonus regularly does or solicits business here or engages in "any other persistent course of conduct in *the District of Columbia."* D.C.Code § 13–423(a)(4) (emphasis added). *See Tavoulareas v. Comnas,* 720 F.2d 192, 194 (D.C.Cir.1983); *McFarlane v. Esquire Magazine,* 74 F.3d at 1301. They therefore fail to meet the requisites of D.C.Code § 13–423(a)(4), and there is no personal jurisdiction over Sonus with respect to any of the claims brought against it.

## C.  *Nycomed*

Finally, with respect to Nycomed's cross-claims against Sonus, Nycomed concedes that if the Court has no personal jurisdiction over Sonus with respect to the main claim, it has no jurisdiction to resolve the cross-claim brought by Nycomed against Sonus. While there was originally some dispute between Nycomed and Sonus as to whether the Court should dismiss or transfer the cross-claims if it found no personal jurisdiction over Sonus, the Court was advised at oral argument that Nycomed and Sonus now agree that if the Court finds no personal jurisdiction over Sonus, then the proper course is for the Court to dismiss the Nycomed cross-claims against Sonus without prejudice. In light of this agreement and the Court's decision that it lacks personal jurisdiction over Sonus, Nycomed's cross claims against Sonus will be dismissed.

## III.   CONCLUSION

Having concluded that the Court lacks subject matter jurisdiction over Bracco, DuPont Merck and ImaRx, and that it lacks personal jurisdiction over Sonus and ImaRx, the proper course is for the Court to dismiss Sonus, Bracco, Bracco International BV, DuPont Merck and ImaRx from this case. It also dismisses the cross-claims brought by Nycomed against Sonus. For the reasons set forth herein, therefore, all that remains of this lawsuit are claims brought by Mallinckrodt and MBI against Nycomed and Nycomed's counterclaims against MBI and Mallinckrodt. An Order consistent with this Opinion is entered this same day.

## *ORDER*

For the reasons set forth in the accompanying Opinion entered this same day, it is hereby

ORDERED that Sonus' motion to dismiss [# 56] is GRANTED; it is

**274**

FURTHER ORDERED that joint motion to dismiss filed by Bracco Diagnostics, Inc. and Bracco International BV [# 49] is GRANTED; it is

FURTHER ORDERED that the joint motion to dismiss filed by defendants DuPont Merck and ImaRx [# 50] is GRANTED; it is

FURTHER ORDERED that Sonus' motion to dismiss Nycomed's cross-claim [# 57] is GRANTED; it is

FURTHER ORDERED that the motion for leave to file under seal filed by DuPont Merck and ImaRx [# 93] is DENIED;

FURTHER ORDERED that a status conference for the remaining parties to this case, Molecular Biosystems, Inc., Mallinckrodt Medical, Inc. and Nycomed imaging AS, is scheduled for January 27, 1998 at 2:00 p.m..