**JENKINS BRICK COMPANY, Plaintiff–Counter–Defendant– Appellant,**

v.

**John E. BREMER, Defendant– Counter–Claimant– Appellee,**

---

AAA Spec Block, Inc., Defendant–
Appellee.

No. 01–16305.

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 2003.

Warren B. Lightfoot, Jr., Stuart D. Roberts, Maynard, Cooper, Frierson & Gale, P.C., Birmingham, AL, for Jenkins Brick Co.

Kristen Wigh Goodman, Savannah, GA, for Bremer.

Before TJOFLAT, WILSON and COWEN\*, Circuit Judges.

TJOFLAT, Circuit Judge:

## I.

Jenkins Brick Company ("Jenkins Brick") contemplated the idea of expanding its Alabama-based operations into the Savannah, Georgia area. John Bremer, a Savannah native who had spent many years working in the brick business that his family owned since 1914, proved to be an ideal candidate to help Jenkins Brick facilitate this expansion. Bremer and Jenkins Brick united on March 31, 1997, when Jenkins Brick hired Bremer to sell brick and block throughout the sales territory that consisted of a fifty-mile radius around Savannah.

In January 1998, a non-compete agreement was presented to Bremer in Savannah by Leon Hawk, Vice President of Jenkins Brick. Hawk told Bremer that his signature was a necessary condition of his continued employment with the company. The lengthy agreement prohibited a variety of competitive practices, including all competition with Jenkins Brick within a fifty mile radius of any Jenkins Brick office or plant for the two years following the conclusion of Bremer's employment. The agreement also prevented Bremer from soliciting business from any existing or prospective customer with whom Bremer had contact during his tenure as a Jenkins Brick employee. Finally, the agreement contained clauses stating that it was to be governed by Alabama law and that it was executed in Alabama.

Bremer's employment came to an end in February 2001, when Bremer voluntarily tendered his resignation. He immediately began working for a Savannah competitor in violation of the non-compete agreement. Jenkins Brick responded by filing suit in the U.S. District Court for the Middle District of Alabama, seeking injunctive and monetary relief. Bremer moved the court to dismiss the case for lack of venue or, alternatively, to transfer the case to the U.S. District Court for the Southern District of Georgia. After hearing argument of counsel, the district court transferred the case to the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a), implicitly holding that venue was proper in Alabama and explicitly holding that the Georgia court would be a more convenient forum.[1]

---

\* Honorable Robert E. Cowen, United States Circuit Judge for the Third Circuit, sitting by designation.

1. Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is implicit in the Alabama court's citation to section 1404(a) that, in the court's view, ven-

After the Georgia court received the case, Bremer moved the court for summary judgment. Citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), which holds that the *Erie* doctrine generally requires district courts to apply the choice-of-law rules of the forum state, Bremer urged the court to look to Georgia law for the rule of decision. Under Georgia law, he contended, the non-compete agreement was unenforceable.[2] In response, Jenkins Brick urged the court to adhere to the Alabama court's implicit determination that venue was properly laid in Alabama, citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988).[3] This, in turn, would require the court to apply the substantive law of the transferor court (i.e., Alabama law) and enforce the non-compete agreement.[4] *See Van Dusen v. Barrack*, 376 U.S. 612, 642–43, 84 S.Ct. 805, 822–23, 11 L.Ed.2d 945 (1964).[5] Whether Bremer was entitled to summary judgment therefore depended on whether venue for Jenkins Brick's case was properly laid in Alabama. Jenkins Brick concedes that if venue did not lie in

---

2. Georgia courts rarely uphold blanket non-compete agreements. *See, e.g., Fields v. Rainbow Int'l Carpet Dyeing & Cleaning Co.*, 259 Ga. 375, 380 S.E.2d 693, 693–94 (1989) ("We have held that a restriction of employment in a business 'in any capacity' is overbroad and unreasonable.") (citation omitted). So disfavored are these clauses that Georgia choice-of-law rules frequently require Georgia courts to apply Georgia substantive law to such agreements, even if contractual choice-of-law clauses incorporate the laws of another state. *See Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368, 369 (1977). When Georgia courts find a provision offensive, the entire non-compete agreement is void. *See Ameri-Gas Propane, L.P. v. T–Bo Propane, Inc.*, 972 F.Supp. 685, 691–92 (S.D.Ga.1997) (collecting Georgia cases).

3. In *Christianson*, the Court held that it is "correct that the [law-of-the-case] doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Christianson*, 486 U.S. at 816, 108 S.Ct. at 2177. The Court thus approved of a horizontal application of the doctrine rather than confining the doctrine to its historical vertical context. The Court observed: "Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts.... Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* at 816, 108 S.Ct. at 2178 (citations omitted).

4. Alabama courts are more permissive of non-compete agreements than Georgia courts. *See, e.g., James S. Kemper & Co. Southeast, Inc. v. Cox & Assocs., Inc.*, 434 So.2d 1380, 1384 (Ala.1983). Moreover, Alabama courts, unlike Georgia courts, typically "blue pencil" otherwise unenforceable provisions of a non-compete agreement. *See Mason Corp. v. Kennedy*, 286 Ala. 639, 244 So.2d 585, 590 (1971).

5. Jenkins Brick argues that there is no choice-of-law issue and that *Van Dusen* instructs that Alabama substantive law must supply the rule of decision. In the alternative, Jenkins Brick argues that the choice-of-law rules of the transferor court apply pursuant to *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S.Ct. 1274, 1277, 108 L.Ed.2d 443 (1990), and that Alabama choice-of-law rules require that Alabama law supply the rule of decision. Bremer counters that there is a choice-of-law issue under any scenario, and that even if venue was properly laid in Alabama, Alabama's choice-of-law rules would require the application of Georgia substantive law.

Alabama, then the district court would have to apply Georgia's choice-of-law rules and Georgia substantive law.

The Georgia court held that venue in Alabama was improper under 28 U.S.C. § 1391(a)(2).[6] The court, applying Georgia substantive law, granted Bremer's motion for summary judgment. Jenkins Brick now appeals the summary judgment. It contends that the court erred in determining that venue was improperly laid in the transferor court. In the alternative, Jenkins Brick contends that even if the Georgia court was correct that venue was improperly laid in Alabama—a proposition that Jenkins Brick fervently disputes—the law-of-the-case doctrine required the Georgia court to defer to the Alabama court's implicit holding that venue was proper in Alabama.

## II.

█ Jenkins Brick argues that even if the court below was correct in its venue analysis, it erred when it failed to give appropriate deference to the Alabama district court pursuant to the so-called "law-of-the-case" doctrine. Jenkins Brick contends, in short, that (1) the Alabama court made a "ruling" that venue in Alabama was proper when it transferred the case to Georgia based upon 28 U.S.C. § 1404(a) rather than 28 U.S.C. § 1406(a), and (2) this decision was binding upon the Georgia court unless the decision was "clearly erroneous and would work manifest injustice."

In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Supreme Court described the law-of-the-case doctrine, and the doctrine's most significant exception, as follows:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Id.* at 817, 108 S.Ct. at 2178 (citations omitted). The use of the phrase "clearly erroneous" is perhaps unfortunate, because those words are typically used to describe the standard of review employed by an appellate court when reviewing a trial court's factual findings. The law-of-the-case doctrine, however, concerns the application of the same legal conclusion by various courts throughout the entire litigation. Indeed, the Court made clear that the "clear error" exception to the law-of-the-case doctrine applies to legal errors. In the same paragraph as the language quoted above, for example, the Court held that once the Seventh Circuit concluded that the prior jurisdictional decision by the Federal Circuit was "clearly wrong," it was "obliged to decline jurisdiction." *Id.*

█ Courts must rarely invoke the "clear error" exception, less the exception swallow the rule. With this principle in mind, the exception can be restated this way: in a close case, a court must defer to

---

6. Jenkins Brick concedes that the only possible basis for venue in Alabama is subsection 2 of section 1391(a). Section 1391(a) provides:

 A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling.

We think that the "error and injustice" exception applies to this case. The "manifest injustice" stems from the fact that if venue in Alabama is deemed proper, Alabama law will likely be used to uphold a non-compete agreement that is contrary to the fundamental public policy of Georgia. The "clear error" will become evident after our discussion of venue below.

## III.

### A.

■ Both parties agree that the focus of this appeal is how this court should interpret subsection 2 of the statute governing venue in diversity cases. *See* 28 U.S.C. § 1391(a)(2) (allowing for venue in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). This language was added in 1990, amending the former subsection 2 which provided for venue only in the single district "in which the claim arose." Congress believed that the old phrase was "litigation-breeding," partly because it did not cover the situation "in which substantial parts of the underlying events have occurred in several districts." *See* H.R. Report of the Committee on the Judiciary, Rep. No. 101–734, at 23 (1990). The old language was problematic because it was oftentimes difficult to pinpoint the single district in which a "claim arose." Consider, for example, a breach-of-contract case with these facts: the agreement is executed in Oregon; the defendant fails to deliver goods to New York and California; and the defendant makes an anticipatory repudiation of the rest of the contract from its home office in Utah. Or consider a toxic tort case in which the defendant's factories in Colorado and Missouri pollute a river, causing injury to Arkansas and Louisiana citizens who ingest the water. If one had to pick a single district in which the tort or contract claim "arose," each scenario would require the district court, after extensive litigation, to pick a district in an arbitrary fashion.

■ The new language thus contemplates some cases in which venue will be proper in two or more districts. This does not mean, however, that the amended statute no longer emphasizes the importance of the place where the wrong has been committed. Rather, the statute merely allows for additional play in the venue joints, reducing the degree of arbitrariness in close cases. The statute's language is instructive: venue is proper in "a judicial district in which a *substantial* part of the *events or omissions giving rise to the claim occurred.*" 28 U.S.C. § 1391(a)(2) (emphasis added). Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered.

In this vein, we approve of cases such as *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). In that case, the plaintiff, a designer and seller of semi-trailers under a federally registered trademark, asserted that the defendant was passing off trailers under an identical trademark. The plaintiff sued in the state of his residency, Iowa, even though he had no evidence of wrongdoing in that state. The Eighth Circuit found that venue was improper, holding that "[t]he place where the alleged passing off occurred ... provides an obviously correct venue." *Id.* at 985. Importantly, the court noted that the statute protects defendants, and Congress therefore "meant to require courts to focus on relevant activ-

ities of the defendant, not of the plaintiff." *Id.* When the plaintiff pointed to a host of facts tending to show a relationship between the defendant and Iowa, the plaintiff was rebuffed. Although the trailers were manufactured in Iowa and an agreement between the plaintiff and defendant was executed in Iowa, the court found that "[t]hese activities [had] an insubstantial connection with the kinds of events that give rise to a claim." *Id.* The court conceded that "[i]t is true that manufacturing the trailers was a necessary event, in a causal sense, to an attempt to pass them off." *Id.* However, the court did not "think that [manufacturing] is an event giving rise to [the plaintiff's] claim because it was not itself wrongful." *Id.* at 986. We think this analytical framework, which considered as relevant only those acts and omissions that have a close nexus to the wrong, is a good interpretation of a statute.

Contrast this decision with another line of cases cited by Jenkins Brick, epitomized by *U.S. Surgical Corp. v. Imagyn Medical Technologies, Inc.*, 25 F.Supp.2d 40 (D.Conn.1998). That case, like the case at bar, involved an employee's breach of a non-compete agreement. The court's venue analysis focused on a host of factors, including: (1) where the contract was to be performed; (2) where the contract was allegedly breached; (3) where the contract was negotiated and executed; (4) where the defendant attended training classes; and (5) where the defendant attended sales meetings. *Id.* at 45. We think this case was incorrect because its flavor was that of a "minimum contacts" personal jurisdiction analysis rather than a proper venue analysis. We do not believe, for example, that a

defendant's attendance at sales meetings is an "event giving rise to a claim" for breach of a covenant not to compete. Accordingly, we disapprove of this line of cases.

## B.

What acts or omissions by Bremer "gave rise" to Jenkins Brick's claim? Of those acts, did a "substantial part" of them take place in Alabama? The events that gave rise to Jenkins Brick's claim occurred exclusively in Georgia. The contract was not negotiated; rather, it was presented to Bremer in Georgia. It was executed in Georgia because that is where Bremer signed the contract.[7] The non-compete agreement was also intended to be performed primarily in Savannah in order to protect the Savannah business and goodwill that Jenkins Brick acquired with the help of Bremer. After all, Bremer's sales territory comprised only Savannah and the surrounding area; there was no goodwill garnered by Bremer in other territories that needed to be "protected" by virtue of the non-compete provision. Perhaps this is why Jenkins Brick seeks to enforce the agreement only in the Savannah territory. Finally, and most importantly, the contract was breached when Bremer failed to perform his post-employment obligation to refrain from competing against Jenkins Brick—conduct that occurred only in Georgia. In sum, none of the acts giving rise to Jenkins Brick's claim occurred in Alabama, much less a "substantial part" of them.

■ Jenkins Brick, citing to cases such as *U.S. Surgical*, points to other facts: sales and training meetings were held in

---

7. Although Jenkins Brick signed the contract in Alabama, the contract was not fully executed until Bremer signed it in Georgia. Moreover, Jenkins Brick's signature was not necessary to execute a binding contract since the company made an offer to Bremer (i.e., to stay employed on the condition that he agree to the non-compete provision) that he accepted when he signed the contract.

Alabama, salary and benefits ultimately came from Alabama, and the agreement was allegedly sent by Bremer to Alabama.[8] As we have indicated, these facts do not have a close nexus with the cause of action for breach of contract, and they are therefore irrelevant. Jenkins Brick also argues that the contract was "executed" in Alabama because the contract says so on its face. However, this does not mean that the contract was, in fact, executed in Alabama; indeed, the record undeniably shows that it was executed in Georgia. We do not believe that a "place of execution" clause can, standing alone, make something true. Unlike a forum selection clause, a "place of execution" clause merely recites a fact about the world which can be refuted with empirical evidence to the contrary. This kind of clause is more akin to a contractual "agreement" that the sky is green. If a court later finds that the sky is blue, it would not have to defer to a contractual provision to the contrary.

In sum, we agree with the district court that all of the events "giving rise to" Jenkins. Brick's claims occurred in Georgia. All of the relevant factors point in one direction: Georgia is the only proper venue for this litigation. We therefore find this case to be one of those rare instances where invocation of the "clear error" exception to the law-of-the-case doctrine is appropriate. The district court's grant of summary judgment in favor of defendants is accordingly

AFFIRMED.

---

8. The last fact is disputed by Bremer.