Jack ABRAMOFF, Plaintiff,

v.

SHAKE CONSULTING, L.L.C.
et al., Defendants.

Civ.A. No. 02–2150.

United States District Court,
District of Columbia.

Aug. 5, 2003.

Carole J. Yanofsky, Nelson C. Cohen,
Zuckerman Spaeder, LLP, Washington,
DC, for Plaintiff.

F. Lane Heard, III, Williams & Connolly LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

TRANSFERRING THE ACTION TO THE SOUTHERN DISTRICT OF FLORIDA

### I. INTRODUCTION

This contract case comes before the court on the defendant's motion to dismiss or transfer this action to the Southern District of Florida. Plaintiff Jack Abramoff, a Maryland resident who maintains an office in the District of Columbia, brings suit against Shake Consulting, L.L.C. ("Shake"), a West Indies limited liability company, and GKB Holdings, L.L.C. ("GKB"), a Florida limited liability company (collectively, "the defendants"), for allegedly breaching an agreement by failing to include certain provisions in a reorganization plan that the defendants filed in federal bankruptcy court in Florida. The plaintiff, who alleges breach of contract as well as breach of the duty of good faith and fair dealing, seeks specific performance of the agreement. In response, defendant GKB filed a motion to dismiss or, in the alternative, to transfer the action to the Southern District of Florida. Because venue is improper in the District of Columbia and the interest of justice favors transfer, the court transfers this action to the Southern District of Florida.

### II. BACKGROUND

#### A. Factual Background

In June 2000, the plaintiff and other investors formed a Florida limited liability company known as SunCruz Casinos, L.L.C. ("SunCruz") and its wholly-owned subsidiary JAB America, Inc. ("JAB") for the purpose of purchasing the assets of SunCruz Casino, Ltd. ("SunCruz Casino"), a Florida partnership that owns and operates Las Vegas-style casino gambling cruise boats. Compl. ¶¶ 10, 16. The plaintiff served as a personal guarantor on various loans financing the purchase. *Id.* ¶¶ 19, 21. In September 2000, SunCruz and JAB closed on the purchase of Sun-Cruz Casino. *Id.* ¶ 17.

On June 22, 2001, however, as the result of poor management, questionable business decisions, and losses from operations, SunCruz and JAB filed a petition for bankruptcy in the Southern District of Florida. *Id.* ¶ 23. At the time of the petition, the plaintiff owned 35 percent and defendant Shake owned 20 percent of SunCruz's membership shares. *Id.* ¶¶ 24–25.

On the same day, while defendant GKB's attorney was in the District of Columbia on unrelated business, the plaintiff and the defendants reached an agreement ("the agreement") relating to the bankruptcy reorganization of SunCruz. *Id.* ¶ 27, Ex. 1; Def. GKB's Motion to Dismiss ("Def.'s Mot.") Exs. 1 ("Blackburn Aff."), 2 ("Steinberg Aff."); Pl.'s Opp'n Ex. 1 ("Goldstein Aff."). Several weeks of negotiations by telephone, e-mail, and fax between the plaintiff's attorney in the District of Columbia and the defendants' attorneys in south Florida preceded the agreement, which the plaintiff executed on June 22, 2001 in the District of Columbia and which GKB executed on June 28, 2001 in Florida. Compl. Ex. 1; Def.'s Mot. at 9; Blackburn Aff.; Steinberg Aff.; Goldstein Aff.

Under the agreement, the plaintiff gave defendant Shake his proxy to vote on all matters on his behalf and also executed a written consent for the removal of SunCruz's current manager and the appointment of defendant Shake or its nominee as the new SunCruz manager. Compl. ¶¶ 28, 33. The plaintiff also transferred his interests in SunCruz and JAB to defendants Shake or GKB. *Id.* ¶ 31. In return, the defendants agreed that any reorganization

plan for SunCruz would provide the plaintiff with a three-percent interest in the reorganized entity upon confirmation, and would release and indemnify him from certain claims and personal guarantees. *Id.* ¶¶ 34–35, 48, 50, 52.

On December 21, 2001, SunCruz and JAB filed a disclosure statement and a plan of reorganization with the bankruptcy court. *Id.* ¶ 37. The statement and plan, however, did not provide the plaintiff a three-percent interest or his release and indemnification. *Id.* ¶ 38, Ex. 2. After the plaintiff's counsel contacted the defendants' counsel to object, SunCruz and JAB filed an amended disclosure statement and plan of reorganization with the bankruptcy court on May 14, 2002. *Id.* ¶¶ 38–40, Exs. 3–4. The amended statement and plan again did not provide the plaintiff with the three-percent interest or release and indemnity from further action. *Id.* ¶¶ 41, 49, 51, 53. In June 2002, the bankruptcy court approved the amended statement and plan. *Id.* ¶ 43.

### B. Procedural History

On November 1, 2002, the plaintiff filed a complaint charging the defendants with breach of contract and breach of the duty of good faith and fair dealing. On December 13, 2002, defendant GKB moved to dismiss the complaint for lack of personal jurisdiction, improper venue, and *forum non conveniens*. In the alternative, defendant GKB asks the court to transfer the case to the Southern District of Florida under 28 U.S.C. § 1404(a). On December 17, 2002, the court's Calendar Committee reassigned this case to this member of the court. On February 6, 2003, after defen-

dant Shake did not file a response, the plaintiff moved for entry of default against defendant Shake. The court now turns to defendant GKB's motion to dismiss or transfer.

### III. ANALYSIS[1]

#### A. Legal Standards

##### 1. Motion to Dismiss Pursuant to Rule 12(b)(3)

To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue. *2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F.Supp.2d 50, 54 (D.D.C.2001) (citing 5A Fed. Prac. & Proc. 2d § 1352). In this circuit, there is "little case law on the question of where the burden of persuasion lies when a plaintiff's choice of venue is challenged." *Johnson v. Washington Gas Light Co.*, 89 F.Supp.2d 45, 47 (D.D.C.2000). Courts in the Fourth Circuit, however, have held that the plaintiff usually bears the burden of establishing that venue is proper. *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F.Supp.2d 468, 471 (D.Md.2002); *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F.Supp. 543, 550 (E.D.Va.1996); *see also* 5A Fed. Prac. & Proc. 2d § 1352 (noting that placing the burden on the plaintiff "seems correct inasmuch as it is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue").

##### 2. Venue Under 28 U.S.C. § 1391(a)(2) and Transfer for Improper Venue Under 28 U.S.C. § 1406(a)

Under section 1391(a)(2) of the general-venue statute, a plaintiff may bring a di-

---

1. Generally, a court should decide questions of personal jurisdiction before questions of venue. *Cameron v. Thornburgh*, 983 F.2d 253, 257 n. 3 (D.C.Cir.1993) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)). Where a

"sound prudential justification" exists, a court may consider venue without deciding the question of personal jurisdiction. *Id.* Accordingly, because "it provides an easier resolution of the case," the court focuses first on the question of venue. *Id.*

4

versity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2); *Buchanan v. Manley*, 145 F.3d 386, 389 (D.C.Cir. 1998). As amended, section 1391(a)(2) explicitly recognizes that venue may be proper in more than one district. *Jacobsen v. Oliver*, 201 F.Supp.2d 93, 108 (D.D.C.2002) (noting that "a court no longer must determine which forum represents the 'best' venue"). At the same time, however, section 1391(a)(2) focuses venue on those districts in which "the events or omissions supporting a claim [are] substantial." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Only locations hosting a "substantial part" of the events that "directly" give rise to a claim are relevant. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Moreover, because the general-venue statute protects the defendant, courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred. *Id.* at 1371–72 (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.1995)); *Gaines, Emhof, Metzler & Kriner v. Nisberg*, 843 F.Supp. 851, 854 (W.D.N.Y.1994); *see also* 17 MOORE'S FED. PRAC. § 110.04[1] (stating that "[g]enerally, the court must focus on activities of the defendant, not the plaintiff").

■ If the plaintiff files suit in a district in which venue is not proper, a court may, in the interest of justice, transfer a case to any other district "in which [the case] could have been brought." 28 U.S.C. § 1406(a). "A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir.1983) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Cellutech,*

*Inc. v. Centennial Cellular Corp.*, 871 F.Supp. 46, 50 (D.D.C.1994). To transfer the action, the court must ensure as a preliminary matter that venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum. *Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C.Cir. 1981) (per curiam); *Crisler v. Schmeltzer*, 1990 WL 113887, at *2 (D.D.C. July 24, 1990). The decision regarding transfer the action rests within the court's sound discretion. *Naartex*, 722 F.2d at 789. The D.C. Circuit favors transfer under section 1406(a) "when procedural obstacles [such as lack of personal jurisdiction, improper venue, and statute-of-limitations bars] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C.Cir.1983).

## B. The Court Concludes that Venue in the District of Columbia is Improper

■ Defendant GKB argues that venue in the District of Columbia is improper because the substantial part of the events giving rise to this action did not take place here, but in Florida. Def.'s Mot. at 17. Specifically, defendant GKB argues that although the plaintiff signed the agreement in the District of Columbia, the "events with operative significance" took place in Florida: the agreement contemplated performance in Florida, and the alleged breach—failure to file a reorganization plan conforming to the agreement— took place in Florida. *Id.* at 16–17; Def.'s Reply at 12.

In response, the plaintiff counters that venue is proper here because "the agreement was negotiated and executed . . . [and] substantially performed" in the District of Columbia. Pl.'s Opp'n at 12; Goldstein Decl. Specifically, the plaintiff points

to the fact that he negotiated the agreement through his attorney in the District of Columbia and performed his duties of executing the proxy and written consent here. *Id.;* Compl. ¶ 2. He also emphasizes that on the date that the parties entered the agreement, his attorney and the defendants' attorney, who was in the District at the time, agreed upon "important material issues" leading to the agreement. Goldstein Decl. Finally, the plaintiff asserts that the alleged breach "will cause Plaintiff to incur substantial damage in the District of Columbia because Plaintiff has his primary place of business in this District." Compl. ¶ 2.

The court concludes that venue in the District of Columbia is not proper because a substantial part of the events or omissions giving rise to the plaintiff's claims did not occur in the District of Columbia. 28 U.S.C. § 1391(a)(2); *Buchanan,* 145 F.3d at 389. First and foremost, the defendants' alleged failure to file a reorganization plan consistent with the terms of the agreement did not take place in this district. *Jenkins Brick,* 321 F.3d at 1372 (finding no venue in Alabama largely because the defendant's contract breach took place only in Georgia); *Woodke,* 70 F.3d at 985 (determining that there was no venue in Iowa because the defendants' wrongful trademark actions took place outside Iowa).

Moreover, although the plaintiff may have entered the agreement in the District of Columbia, entry into an agreement does not automatically qualify as a substantial part of the events or omissions giving rise to a breach-of-contract claim.[2] *Fin. Mgmt. Servs., Inc. v. Coburn Supply Co., Inc.,* 2003 WL 255232, at *2 (N.D.Ill. Feb. 5, 2003) (finding that the "mere" but-for relationship between the signing of a contract and its breach does not transform the contract signing into a substantial part of the events giving rise to the claim); *see also Woodke,* 70 F.3d at 985 (concluding that although the manufacture of trademarked trucks was a necessary event to the alleged trademark infringement, it did not constitute a substantial part of the events giving rise to the claim). Here, the finalized agreement was a prerequisite to the defendants' alleged breach, but the act of finalizing the agreement was not itself wrongful and did not directly give rise to the plaintiff's claim. *Woodke,* 70 F.3d at 985.

Finally, the fact that the plaintiff may feel damages in the District of Columbia does not create venue under section 1391(a)(2). *Fin. Mgmt. Servs.,* 2003 WL 255232, at *2 (concluding that basing venue on the place of economic harm would eviscerate the venue statute); *Bigham v. Envirocare of Utah, Inc.,* 123 F.Supp.2d 1046, 1049 n. 2 (S.D.Tex.2000) (noting that the place where the effects of the alleged wrong are felt does not create venue). Accordingly, the court concludes that venue is not proper in this district.[3] *2215 Fifth St. Assocs.,* 148 F.Supp.2d at 54.

2. The agreement technically was not fully executed until the defendants signed it in Florida. *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 n. 7 (11th Cir.2003) (stating that a contract signed by the plaintiff in Alabama was not fully executed until the defendant signed it in Georgia).

3. Even if venue were proper in the District of Columbia, a transfer to the Southern District of Florida likely would be warranted pursuant to 28 U.S.C. § 1404(a), which authorizes transfer "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). First, the plaintiff could have brought the action in the Southern District of Florida. *Trout Unlimited v. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996). Second, considerations of convenience and the interest of justice weigh in favor of transfer, as the local interest in deciding local controversies at home, the convenience to witnesses,

**6**

### C. The Court Concludes That Transfer to the Southern District of Florida Is in the Interest of Justice

Although venue is not proper in this district, the court determines that the interest of justice favors the transfer of this action to the Southern District of Florida. 28 U.S.C. § 1406(a); *Naartex*, 722 F.2d at 789. First, lack of venue, as a "procedural obstacle," should not bar resolution of the plaintiff's claims on the merits. *Sinclair*, 711 F.2d at 294. Second, transfer also "will save the parties the time and expense of refiling this lawsuit in a different district." *Cellutech*, 871 F.Supp. at 50. Moreover, it appears that venue would be proper and the defendants would be subject to personal jurisdiction in the Southern District of Florida. *Sharp Elecs. Corp.*, 655 F.2d at 1230; *Crisler*, 1990 WL 113887, at *2. Given that the alleged breach occurred in the Southern District of Florida, venue is proper there. 28 U.S.C. § 1391(a)(2). As for personal jurisdiction, defendant GKB—a Florida limited liability company that maintains its sole place of business in Florida—is subject to general jurisdiction in Florida as a defendant that engages in "substantial and not isolated activity" within Florida. Compl. ¶ 4; Def.'s Mot. at 1, 4; FLA. STAT. ANN. § 48.193(2); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir.2002). Similarly, defendant Shake—a West Indies limited liability company—likely is subject to specific jurisdiction under Florida's long-arm statute for allegedly "breaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]."[4] Compl. ¶ 5; FLA. STAT. ANN. § 48.193(1)(g); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999). Accordingly, because transfer to the Southern District of Florida best serves the interest of justice, and the requirements of venue and personal jurisdiction are met, the court transfers the case to that district. 28 U.S.C. § 1406(a); *Naartex*, 722 F.2d at 789.

## IV. CONCLUSION

For the foregoing reasons, the court transfers this case to the Southern District of Florida.[5] An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of August, 2003.

---

and the ease of access to sources of proof outweigh the plaintiff's choice of forum. *Id.*

4. The Eleventh Circuit has interpreted section 48.193(1)(g) to "mean[ ] that there must exist a duty to perform an act *in Florida.*" *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1218 (11th Cir.1999) (emphasis in original). Here, the plaintiff alleges that defendant Shake breached the agreement by failing to include certain provisions in the SunCruz reorganization plan. Compl. ¶¶ 58–65. Because Sun-

Cruz and JAB filed for Chapter 11 bankruptcy in Florida, defendant Shake had to perform its alleged duty to include the provisions in the SunCruz reorganization plan in Florida. *Id.* ¶ 37; *Posner*, 178 F.3d at 1218.

5. Because the court determines that venue is not proper in the District of Columbia, it must leave the question of defendant Shake's default to the sound discretion of its sister court in the Southern District of Florida.