**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,**

v.

**SEPCO CORPORATION, Defendant, Counterclaim Plaintiff, and Third–Party Plaintiff,**

v.

**United National Insurance Company;**

et al.,[1] Third–Party Defendants.

No. CIV.A. 81–G–1215–S.

United States District Court,
N.D. Alabama,
Southern Division.

Jan. 26, 2004.

1. Third–Party Defendants Associated International Insurance Company, Forum Insurance Company, Industrial Indemnity, Industrial Underwriters Insurance Company, National Union Fire Insurance Company of Pittsburgh (dismissed with prejudice January 24, 2003), and Twin City Fire Insurance Company were added in Sepco Corporation's Eighth Amended Complaint filed April 23, 2002.

Connie Ray Stockham, Stockham & Stockham PC, Birmingham, AL, for plaintiff.

Paul A. Liles, Richard F. Ogle, Ogle, Liles & Upshaw LLP, Birmingham, AL, James H. Anderson, Beers, Anderson, Jackson, Nelson, Hughes & Patty PC, Montgomery, AL, Richard D. Martindale, Rachel S. Kronowitz, Scott N. Godes, Gilbert, Heintz & Randolph LLP, Washington, DC, for defendants.

Connie Ray Stockham, James M. Smith, Sockham & Stockham PC, Birmingham, AL, for movant.

Connie Ray Stockham, Stockham & Stockham PC, Birmingham, AL, Paul G. Smith, Smith, Spires & Peddy PC, Birmingham, AL, Howard K. Glick, Spain & Gillon LLC, James P. Rea, E. Ann McMahan, Dominick, Fletcher, Yielding, Wood & Lloyd, Birmingham, AL, Richard S. March, United National Insurance Company, Bala Cynwyd, PA, for trustee.

## MEMORANDUM OPINION

GUIN, District Judge.

As stated in the court's memorandum opinion of April 7, 2003, this cause has been before the court for many years. Many original parties and most original counsel are no longer involved in the litigation and the court has no intention of revisiting issues decided long ago. Through the years many complex issues have been decided by this court and the Eleventh Circuit Court of Appeals. These decisions have become the "law-of-the-case." In its April 7, 2003, decision on cross motions for summary judgment filed by Sepco Corporation [hereinafter Sepco] and First State Insurance Company [hereinafter First State] the court adopted the motion of First State as being the correct statement of law. Sepco is required to satisfy the $1,000.00 per claim deductible contained in the primary policy issued by Canadian Universal Insurance Company [hereinafter Canadian Universal].

■ In so holding the court excerpted a passage from *Vincent v. First Alabama*

*Bank,* —— So.2d ——, 2002 WL 31845168,*2 (Ala.Civ.App. December 20, 2002) (following the holding in *Blumberg v. Touche Ross & Co.,* 514 So.2d 922, 924 (Ala.1987)),[2] in which the law-of-the-case doctrine was succinctly stated as follows:

> Under the doctrine of the "law-of-the-case," whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.

■ Opinion language follows:

The Eleventh Circuit Court of Appeals, in *Jenkins Brick Company v. Bremer,* 321 F.3d 1366, 1368–70 (11th Cir.2003)[3] referred to the decision of the Supreme Court in *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988), in which the court described the law-of-the-case doctrine and its most significant exception, as follows:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

In *Jenkins,* at 1368–70, our circuit interpreted the wording to mean that the doctrine concerns the application of the same legal conclusions by various courts throughout the entire litigation. The Court made it clear that the "clear error" exception to the law-of-the-case doctrine applies to legal errors. The "clear error" exception has not been brought into play in the instant case, there having been no legal errors.

The court has extracted material from the April 7, 2003, memorandum opinion because it applies to all issues presently before the court.

■ The April 7, 2003, order and opinion is a correct statement of the law. By order[4] and memorandum opinion[5] of February 19, 1988, this court held that Sepco was to pay Canadian the $1,000.000 deductible due on each claim submitted and that Canadian could charge the first $1,000.00 for defense costs. Through the years Sepco has been required to exhaust the underlying Canadian policy. Payment of $1,000.00 deductible due on each claim submitted has been the law-of-the-case since 1988. By terms of the policy and law-of-the-case the deductible remains in effect until Sepco's payments exceed $500,000.00 in claims over $1,000.00 per claim obligation. At that time Sepco's first-layer excess coverage written by First State comes into play. First State is not obligated to Sepco under the Bodily Injury Liability coverage until the damages exceed $500,000.00 in settlements or judgments in excess of Sepco's $1,000.00 per claim deductible obligation.

The court HOLDS that the April 7, 2003, order and memorandum opinion are the correct statement of law and the April 18, 2003, motion of Sepco to alter and amend is DENIED.

**2.** *Vincent v. First Alabama Bank,* —— So.2d ——, ——, 2002 WL 31845168, *2 (Ala.Civ.App. December 20, 2002), *rev'd on other grounds. Ex parte First Alabama Bank,* —— So.2d ——, 2003 WL 22113920 (Ala., September 12, 2003), *on remand to, Vincent v. First Alabama Bank,* —— So.2d ——, 2004 WL 68731 (Ala.Civ.App. January 16, 2004) (judgment of trial court in favor of bank affirmed).

The description of the law-of-the-case doctrine is not affected.

**3.** 321 F.3d 1366 (11th Cir.2003).

**4.** Document # 366 in court file.

**5.** Document # 365 in court file.

▮ The court also DENIES the motion of Sepco to strike First State's May 7, 2003, surreply memo of points and authorities in opposition to Sepco's motion to clarify and amend, there being no legitimate reason to do so, First State having checked with the court prior to its submission. Sepco failed to make a similar request[6] of the court to respond thereto. Sepco has suffered no prejudice.

Motions before the court not previously visited include Sepco's motion for partial summary judgment against Transportation Insurance Company and Continental Casualty Company (collectively referred to as CNA)[7] and CNA's motion for summary judgment against Sepco.

Sepco contends that CNA must provide coverage to Sepco for asbestos-related bodily injury claims allocated to comprehensive general liability in policies Fluorocarbon Corporation [hereinafter Fluorocarbon][8] issued beginning January 31, 1987, through January 31, 1991 [hereinafter referred to as Post–1986 CNA policies]. The policies at issue are listed below:[9]

1) the primary policies from 1/31/87 through 1/31/91, none of which include Sepco as a named insured nor any other Fluorocarbon subsidiary;

2) the first level excess policies from 1/31/87 through 1/31/90, which do not name Sepco as an insured;

3) the high level excess policy for the 1/1/84–85 period, which does not name Sepco as an insured;

4) the primary policy for the 1/31/91–92 period which contains two asbestos exclusions.[10][11]

6. On August 6, 2003, Sepco, itself, filed a surreply memorandum in response to CNA's reply memorandum in support of CNA's motion for summary judgment.

7. Third-party defendants note that "CNA" has been incorrectly sued. "CNA" is not a legal entity capable of suing or being sued. It is a trade name used by a related group of independent companies, two of which are Continental Casualty Company and Transportation Insurance Company. Continental Casualty Company issued excess liability insurance policies to Sepco and Flurocarbon. Transportation Insurance Company issued primary liability insurance policies to Fluorocarbon. "CNA" did not issue any insurance policies to either Sepco or Fluorocarbon. For purposes of this opinion the court will refer to third-party defendants as Sepco has denoted: CNA.

8. In 1982 Sepco was purchased by Fluorocarbon. At all times, however, it has remained a separate entity.

9. All of the policies at issue have been submitted to the court.

10. The 1991 primary policy (Sepco not named insured) language reads as follows:
This insurance does not apply to:

(1) "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of actual, alleged or threatened exposure to asbestos; or
(2) Any loss, cost or expense that may be awarded or incurred;
(a) by reason of a claim or "suit" for any such injury or damage; or
(b) in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.
Asbestos means the mineral in any form whether or not the asbestos at any time:
(1) airborne as a fiber, particle or dust;
(2) contained in or formed a part of a product, structure or other real or personal property;
(3) carried on clothing;
(4) inhaled or ingested; or
(5) transmitted by any other means.
The second exclusion reads:
It is agreed that products hazard does not include bodily injury or property damage claims resulting from the use of or exposure to asbestos including, but not limited to asbestos, lung cancer, pleural mesothelioma, and peritoneal mesothelioma.

11. The exclusion language is on a separate page of the policy headed with the following language:

Also at issue is/are a policy/policies referred to as the "lost" excess policy/policies Sepco alleges CNA issued to Sepco for the 9/30/72–74 period. Sepco has never produced the policies and CNA has no record of them. Since Sepco has failed to produce the policies and failed to carry its burden of proof that the policies existed, the court holds this to be a non-issue.

By order and memorandum opinion of February 19, 1989 [hereinafter Order], the court ordered that the policies issued by CNA from September 30, 1982, through the present be added to the list of policies in which CNA was listed as a primary carrier obligated to provide coverage to Sepco. During the intervening years, pursuant to the court's order, CNA has paid claims and costs associated with defending these claims. In the affidavit of Sheri Brutsch, senior claims manager for Sepco, Ms. Brutsch maintains Fluorocarbon continued to pay retrospective premiums to CNA. Although she refers to a May 6, 1998, letter of John May as proof of same, the letter does not mention Sepco or in any manner indicate that the premium was "for Sepco asbestos-related claims." Sepco has submitted no evidence that premiums were paid for anything other than coverage as issued by CNA and reflected in the policies submitted by Sepco and CNA.[12]

Coverage provisions of policies issued is dramatically different between the Pre–1986 CNA Policies and the Post–1986 CNA Policies. In spite of Sepco's argument that the language is identical, Sepco was removed from coverage starting with the January 31, 1987, policy. The January 31, 1991–1992, CNA primary policy contains two asbestos exclusions[13] not found in the earlier policies. These exclusions[14] are tacitly acknowledged by Brutsch by her omission of the 1991–1992 policies from her description of policies with "identical coverage."[15] The policies speak for themselves as shown by the table below:

| Policy Period | Level | Policy No. | Named Insured(s) |
| --- | --- | --- | --- |
| 9/29/82–1/1/83 | primary | CCP 00–216–05–76 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |
| 9/29/82–1/1/83 | 1st level excess | RDX 08–216–05–77 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |
| 1/1/83–1/1/84 | primary | CCP 07–216–06–05 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
EXCLUSION—ASBESTOS
This endorsement modifies insurance provided . . . .

12. See table beginning at 9.

13. See n. 10 at 6.

14. By letter of January 30, 1990, John C. Magee III, CNA Branch Manager notified Mr. Hank Schrimmer of Schrimmer Insurance Agency that it was interested in renewing the Fluorocarbon account, but because of the significant claims for asbestos exposure "beginning in 1991 any renewal proposal would include the Asbestosis Exclusion as a mandatory endorsement to the policy."

15. The court has previously noted that the policies were not "identical." Sepco was not mentioned in the policies.

| | | | |
|---|---|---|---|
| 1/1/83–1/1/84 | 1st level excess | RDX 03–216–06–07 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |
| 1/1/84–1/1/85 | primary | CCP 07–216–06–05 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |
| 1/1/84–1/1/85 | 1st level | RDX 03–216–06–07 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc. |
| 1/1/85–1/31/86 | primary | CCP 70–216–06–05 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** and Sepco International, Inc., Plastic and Rubber Products, Inc. and Fo–Mac, Inc. |
| 1/1/85–1/31/86 | 1st level excess | RDX 30–216–06–07 | Fluorocarbon and, per endorsement, Reeves Rubber, Inc., Sparta Fluor–Plastic Products, Inc., **Sepco Corporation** Sepco International, Inc., Fo–Mac, Inc. and Plastic and Rubber Products, Inc. |
| 1/31/86–1/31/87 | primary | CCP 70–216–06–05 | Fluorocarbon, Sparta Fluor–Plastic Products, **Sepco Corporation** and Fluorocarbon Components |
| 1/31/86–1/31/87 | 1st level excess | RDX 30–216–06–07 | Fluorocarbon, Sparta Fluor–Plastic Products, Inc. **Sepco Corporation** and Fluorocarbon Components |
| 1/31/87–1/31/88 | primary | CCP 70–216–06–05 [16] | Fluorocarbon |
| 1/31/87–1/31/88 | 1st level excess | RDX 30–216–06–07 | Fluorocarbon |
| 1/31/88–1/31/89 | primary | CCP 70–216–06–05 | Fluorocarbon |
| 1/31/88–1/31/89 | 1st level excess | RDX 30–216–06–07 | Fluorocarbon |
| 1/31/89–1/31/90 | primary | CCP 70–216–06–05 | Fluorocarbon |
| 1/31/89–1/31/90 | 1st level excess | RDX 30–216–06–07 | Fluorocarbon |
| 1/31/90–1/31/91 | primary | CCP 70–216–06–05 | Furon [17] |
| 1/31/90–1/31/91 | 1st level excess | RDX 30–216–06–07 | Furon |

Subsequent to February 19, 1988, CNA wrote four additional primary and umbrella insurance coverage policies covering January 31, 1989, through January 31, 1991. At no place on any of the Post–1986 CNA Policies does Sepco's name appear as a named insured. At no place in any of the material submitted to the court on the motions presently before it does Sepco even claim it was a named insured. Rather, it claims that CNA relinquished the right to argue that Sepco is not a named

16. This policy is a composite of material provided by CNA and Fluorocarbon /Sepco.

17. Fluorocarbon's name was changed to Furon. For clarity's sake Furon will be referred to hereafter in the opinion as Fluorocarbon.

insured under the theories of laches, waiver and estoppel, and the law-of-the-case doctrine, citing the Handling Document and Addendum thereto and the fact that CNA has defended and paid claims. Defendants argue payments made were made in good faith pursuant to the February 19, 1989, order of the court [Order].

According to the July 25, 2003, declaration of Richard J. Solski, a claim consultant with Continental Casualty Company, one of the CNA insurance companies, he was previously assigned responsibility for handling the asbestos injury claims submitted for coverage under the policies of CNA companies. Prior to spring 2003 Mr. Solski was the person with CNA with front-line claims responsibility for the account. He represented CNA in negotiations of the Second Handling Agreement regarding the handling of asbestos-related bodily injury claims under the Sepco/Fluorocarbon primary policies, as well as in the discussions regarding the handling of the asbestos-related bodily injury claims under the Sepco/Fluorocarbon excess policies.

■■■ Prior to the summer of 2003, CNA had been unable to locate complete copies of the Sepco/Fluorocarbon primary or excess insurance policies in spite of corporate-wide searches of its on-site and off-site storage facilities. It had been unable to locate its underwriting files concerning the account. During the summer of 2002, however, in the process of relocating a California branch office, CNA found a box of miscellaneous documents relating to the account. After reviewing the documents (some of which were copies of Sepco/Fluorocarbon policies), sharing with Sepco/Fluorocarbon the policies and portions of policies provided to CNA by Sepco/Fluorocarbon, CNA was able to virtually reconstruct all of the policies which CNA had issued to Sepco/Fluorocarbon.[18] At that point CNA realized Sepco was not an insured on *any* policy it issued to Fluorocarbon after 1986. Mr. Solski raised the point in discussions with Sepco/Fluorocarbon's lawyers and it became one, if not **the**, principal issue driving the negotiations and on-going discussions. In spite of repeated requests Sepco/Fluorocarbon never provided CNA any evidence that Sepco had remained as an insured on the Post–1986 CNA Policies or that it falls within the policies' definition of who is insured. Investigation confirmed that Sepco was an independent corporate subsidiary of Fluorocarbon that had to be separately listed on Fluorocarbon's policies as an insured in order to have coverage.[19] As Sepco was not listed it was not insured under those policies. CNA stopped providing coverage.

While Sepco argues that it would be prejudiced if CNA were not held liable for claims under those policies, third-party defendants indicate that Sepco/Fluorocarbon has in no way been harmed. For years it

18. According to Mr. Solski at least one claimed Sepco excess policy remains missing and no evidence of its existence was uncovered. See ruling of court at 7.

19. Sepco has been a wholly-owned corporate subsidiary of Fluorocarbon since 1982. As such, unless it is a named insured to the policy by endorsement, it does not come within the definition of who is an insured in each of the CNA/Fluorocarbon policies. Each of the primary CNA/Fluorocarbon policies covers the corporate named insured, its executive officers, directors and stockholders while act-

ing within the scope of their duties. A separate endorsement would have to be written to add any other entity.

The excess CNA/Fluorocarbon policies include as insured only those entities identified as such in the immediately underlying policy/policies. Such entities are separately identified in an endorsement to the policy. Sepco was so identified on all policies beginning before 1/31/87. On all policies beginning after 1/1/87 Sepco is not identified as an insured. Sepco was not a named insured in any endorsement to any CNA policy.

has been the beneficiary of a defense and indemnity to which it was not entitled under the Post–1986 CNA Policies. Sepco never paid a premium for these policies. The premium paid was for coverage actually issued by CNA to cover Fluorocarbon. Sepco has submitted no evidence that any premiums paid were paid for anything other than coverage *as issued* by CNA and reflected in the policies submitted by Sepco and CNA. Records submitted to the court indicate CNA has paid $7, 110,811.20 in indemnity claims against Sepco—an amount in excess of the limits of the pre–1/31/87 (incepting) policies (excluding the allegedly "lost" 9/30/72–74 excess liability insurance policies) by $1,110,811.20.

■ Earlier the court held that the law-of-the-case doctrine applied to the April 7, 3002, order and memorandum opinion and quoted opinion language. *Jenkins*, cited herein, held that the "clear error" exception of the law-of-the-case doctrine applies to legal errors which had not been brought into play.[20] There have been legal errors in the instant case. The February 19, 1989, order [Order] and memorandum opinion were predicated on the belief that Sepco was a named insured in the policies issued by CNA. Since that time evidence has shown that Sepco was not a named insured and that the court ruling was in error.

■ The following citation and quotation support application of the rule which permits the court in this case to revisit this issue:

"Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case." *Venn v. St. Paul Fire & Marine Ins.*

*Co.,* 99 F.3d 1058, 1063 (11th Cir.1996). The law of the case doctrine, however, bars consideration of "only those legal issues that were actually, or by necessary implication, decided in the former proceeding. . . ." *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 n. 3 (11th Cir.1990). Furthermore, "[t]he doctrine 'directs a court's discretion, it does not limit the tribunal's power.' " *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 966 (11th Cir.2000) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). Therefore, we may reconsider an issue already decided by this court in the same case if, since the prior decision, new and substantially different evidence is produced, or there has been a change in controlling authority. *See Venn,* 99 F.3d at 1063. We may also reconsider an issue if the prior decision was clearly erroneous and would result in a manifest injustice. *See id.*

*Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1289 (11th Cir.2000), *reh'g and reh'g en banc denied,* 248 F.3d 1181 (11th Cir.2001).[21]

Defendants have presented another argument to the court as to why the law-of-the-case doctrine does not apply: the December 7, 1987, motion to alter, or for clarification, of order entered on November 17, 1987, limits its force to those policies which were in existence (the February 19, 1988, Order at 3), and perforce, is inapplicable to the Post–1986 CNA Policies. Defendants further direct the court to *Hester v. Intern. Union of Operating Engineers,* 941 F.2d 1574, 1581, n. 9, a portion of which follows:

20. There were no legal errors in *Jenkins*.

21. The *Oladeinde* court held that the law-of-the-case doctrine did not prevent it from revisiting an earlier order affirming the denial

of a motion for summary judgment. One of the reasons was that "new and substantially different evidence was introduced at trial." When the facts changed so did the court's decision.

Hester argues that this court's reversal of the district court's grant of summary judgment in its prior decisions *necessarily* included a determination by this court that there were *no* possible grounds for the granting of summary judgment, and that determination is now binding as the law of the case.... However, "[t]he doctrine does not extend to every issue that could be ever raised in a given litigation but rather is limited to those issues previously decided," *Heathcoat [v. Potts]*, 905 F.2d [367] at 370 [(11th Cir.1990)], *i.e.*, only to "issues decided expressly or by necessary implication." *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir.1985), *cert denied*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). Notwithstanding the law of the case doctrine, a district court on remand "is free to address, as a matter of first impression, those issues not disposed of on appeal." *Id.* at 1119 (citations omitted); *see also Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 n. 3 (11th Cir.1987) ("The district court may address issues not disposed of on appeal."), *cert denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988).

*See also In re Discount Foods, Inc. v. Supervalu*, 789 So.2d 842, 846 n. 4 (Ala. 2001) (The law-of-the-case doctrine does not in all circumstances require rigid adherence to rulings made at an earlier stage of the case, but directs a court's discretion rather than limiting its power.).

For the following reasons the court HOLDS that the law-of-the-case doctrine is not applicable to the motions for summary judgment not previously decided:

1) The facts considered by the court in connection with the Order do not continue to be the facts of the case; new and substantially different evidence has been produced. *Oladeinde.*

2) Sepco is *not* a named insured under the Post–1986 CNA Policies.

3) At no time has Sepco contended that it is a named insured under the Post–1986 CNA Policies.

4) No party has provided the court with a copy of any of the CNA policies in connection with the Order.[22]

5) Now that the actual policies have been located and are available they govern the parties' relationship.

6) It would be a manifest injustice to obligate CNA for policy terms not contemplated or for which premiums have not been paid. *Oladeinde.*

7) The court may address issues not previously addressed in light of the evidence. *Hester.*

8) The law-of-the-case does not require rigid adherence to rulings made at an earlier stage. *In re Discount Foods.*

Because the Handling Agreement and Addendum were predicated on error the above-listed holdings apply to those documents.

 Having addressed the issue of law-of-the-case, the court addresses the laches argument advanced by Sepco. Sepco maintains CNA is barred from asserting it is not liable for payment of asbestos claims falling under the Post–1986 CNA Policies because it has paid the claims in the past pursuant to the Order. Laches only applies if the alleged delay in asserting a claim is both (i) inexcusable and (ii) has resulted in undue prejudice to the opposing party. An inexcusable delay is required. *Citibank N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546 (11th Cir.1984), *reh'g denied*, 731 F.2d 891 (11th Cir.1984)

---

**22.** At the time the Order was entered the parties and the court were acting on the mis- conception that such policies did exist.

("The test for determining laches is a flexible one: the court must examine both the amount of delay and the prejudice caused by that delay."); *Homewood City Bd. of Ed. v. Alabama St. Tenure Commission,* 716 So.2d 1208 (Ala.Civ.App.1997) (Court dismissed writ of mandamus because it was not seasonably filed and thus barred by laches); *Touchstone v. Peterson,* 443 So.2d 1219, 1226 (Ala.1983) ("To be affected by laches, the delay must have been with notice of the existence of the right, resulting in disadvantage, harm, or prejudice to another, or have operated to bring about changes in conditions and circumstances so that there can no longer be a safe determination of the controversy.") *Touchstone* went on to say that special facts which make the delay culpable must appear.

In the case at bar there was no inexcusable delay.

 1) Within days of discovering that Sepco was not a named insured under the Post–1986 CNA Policies, CNA notified Sepco's coverage counsel and raised the issue. Discussions and negotiations followed during the next year. Before being able to reconstruct the policies in 2002 neither Sepco nor CNA was aware that Sepco was not an insured.

2) Sepco has provided no evidence of any prejudice from the "delay." It has received the full benefit of coverage, for which it was not entitled, under all the CNA primary policies from 1987 until 2002 when CNA stopped coverage. CNA has paid millions of dollars in excess of the total indemnity limits under all CNA/Fluorocarbon policies subject to reallocation. Since 1992 Sepco has known CNA disput-

ed its right to coverage under the Post–1986 CNA Policies and could have moved to terminate mediation at any time. Had Sepco so moved to terminate mediation the issue could have been brought before the court. CNA adhered to the terms of the Order and engaged in good faith mediation with Sepco.

3) Although Sepco has argued it has been prejudiced by lost witnesses [23] to coverage and moneys paid in premiums based on asbestos-related claims allocated to the 1987 through 1991 policies it has brought no evidence before the court. Although the court has previously noted that Sepco lacked coverage for this period and premiums paid actually covered the coverage as written, premiums mistakenly paid can be adjusted, reallocated and/or credited against the millions by which CNA has over-paid its obligations.

Sepco has presented no evidence that it has actually suffered prejudice. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, (Fed.Cir.1992), in discussing laches, noted that the defense of laches "is committed to the sound discretion of the district court." 960 F.2d at 1032. The decision reiterated there must be unreasonable and inexcusable delay which caused prejudice or injury. The length of time which may seem unreasonable depends on the individual case. *Id.* "The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of the suit." *Id.* Material prejudice resulting from the delay is essential. 960 F.2d at 1033. The material may either be economic or evidentiary.[24] In addition the court

---

**23.** Though argued, Sepco has provided no evidence (just unsupported statement in a memorandum of law) that any witnesses have been lost. *See American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 436 (11th Cir.1999) ("Unsupported assertions in a brief

cannot substitute for evidence in the record."). No proof of prejudice has been offered.

**24.** Sepco has alleged it needs more time for discovery to find the insurance agent who

must consider any justification offered for the delay. The court is satisfied the parties acted in good faith and there was no unreasonable delay.

CNA's discovery of the lost policies when moving a branch office, its immediate notice to Sepco, and the ensuing negotiations provide sufficient justification for delay in its 2002 refusal to make further asbestos-related payments on Post–1986 CNA Policies. The terms of the policies are clear and unambiguous. Sepco is not a named party. The primary CNA policies clearly state that "[o]**nly the named insured is an insured under this insurance.** This insurance does not apply to bodily injury arising out the conduct of any partnership or joint venture of which the insured is a partner or member, and which is not designated in this policy as a named insured." [25] Policies must be enforced as written. *See Ross Neely Systems v. Occidental Fire & Cas. Co.*, 196 F.3d 1347, 1350 (11th Cir.1999) (An unambiguous contract must be enforced as written and unambiguous endorsement supplants conflicting general terms.). Until the policies were found showing that Sepco was not a named insured CNA abided by the Order and paid and defended claims. Now that the error on which previous orders was premised has been corrected CNA should not be deprived of its legal rights because it followed the orders of the court.

For the reasons set forth in this opinion the court holds the following:

1) The April 18, 2003, motion of Sepco to alter and amend its April 7, 2003, order and opinion be and it hereby is DENIED.

2) The May 8, 2003, motion of Sepco to strike First State's surreply memo is DENIED.

3) The July 9, 2003, motion by Sepco for partial summary judgment against Transportation Insurance Company and Continental Casualty [designated as CNA] is DENIED.

4) The July 9, 2003, motion by CNA for summary judgment against Sepco is GRANTED.

5) Any other outstanding motions not addressed by entry of this order are MOOT.

An order consistent with this opinion is being entered contemporaneously herewith.

wrote the policies and discover evidence. The court finds no merit in the request. The policies are before the court and speak for themselves. Not even Sepco argues that it is a named insured on the policies. Laches does not come into play.

25. Pre–1987 primary policies list Sepco as a named insured in a "Named Insured Endorsement," which is expressly referred to in the box on the Declaration Page in which the named insured is identified. Post–1986 CNA Policies do not identify Sepco as a named insured and there is no reference on the Declaration Page to a "Named Insured Endorsement."